UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       *Plaintiff*,<br><br>v.<br><br>CARGILL MEAT SOLUTIONS CORP.,<br>*et. al.*,<br><br>                       *Defendants*. | Civil Action No.: 1:22-cv-1821 |

**FINAL JUDGMENT**

WHEREAS, Plaintiff, the United States of America, filed its Complaint on July 25, 2022, alleging that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

AND WHEREAS, the United States and Defendants Webber, Meng, Sahl & Company, Inc. d/b/a/ WMS & Company, Inc. and G. Jonathan Meng (collectively, "Settling Defendants") have consented to the entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

AND WHEREAS, Settling Defendants agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint;

AND WHEREAS, Settling Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

1

I.      **JURISDICTION**

This Court has jurisdiction over the subject matter of this action and each of the parties named herein. The Complaint states a claim upon which relief may be granted against the Settling Defendants under Section 1 of the Sherman Act, 15 U.S.C. § 1.

II.      **DEFINITIONS**

As used in this Final Judgment:

A.      "WMS" means Defendant Webber, Meng, Sahl and Company, Inc., d/b/a WMS & Company, Inc., a Pennsylvania corporation with its headquarters in Pottstown, Pennsylvania, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their partners, directors, officers, managers, agents, and employees.

B.      "Meng" means Defendant G. Jonathan Meng, who resides in Silverthorne, Colorado, and is President of WMS.

C.      "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

D.      "Communicate" means to discuss, disclose, transfer, disseminate, circulate, provide, request, solicit, send, receive or exchange information or opinion, formally or informally, directly or indirectly, in any manner, and regardless of the means by which it is accomplished, including orally or by written means of any kind, such as electronic communications, e-mails, facsimiles, telephone communications, voicemails, text messages, audio recordings, meetings, interviews, correspondence, exchange of written or recorded information, including surveys, or face-to-face meetings.

E.      "Compensation" means all forms of payment for work, including salaried pay, hourly pay, regular or ad hoc bonuses, over-time pay, and benefits, including healthcare

coverage, vacation or personal leave, sick leave, and life insurance or disability insurance policies.

  F. "Confidential Competitively Sensitive Information" means non-public information that is relevant to, or likely to have an impact on, at least one dimension of competition (including price, cost including Compensation, output, quality, and innovation). Confidential Competitively Sensitive Information includes prices, strategic plans, amounts and types of Compensation, other information related to costs or profits, markets, distribution, business relationships, customer lists, production capacity, and any confidential information the exchange of which could harm competition.

  G. "Including" means including, but not limited to.

  H. "Non-public information" means information that is not available from public sources and generally not available to the public.

  I. "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, governmental unit, or other legal entity.

  J. "Poultry Processing" means the business of raising, slaughtering, cleaning, packing, packaging, and otherwise producing of poultry, including activities conducted at feed mills, hatcheries, and processing plant facilities and the management of those activities.

  K. "Poultry Processor" means any person engaged in Poultry Processing or that owns or controls, in full or part, Poultry Processing facilities, or that provides Compensation to Poultry Processing workers.

III.     APPLICABILITY

This Final Judgment applies to Settling Defendants and all other persons in active concert or participation with either of them who receive actual notice of this Final Judgment.

IV.     PROHIBITED CONDUCT

A.     Settling Defendants must not provide services directly or indirectly to any person for the purpose of conducting or otherwise facilitating any exchange, including by survey, of Confidential Competitively Sensitive Information among one or more persons. Provided, however, Settling Defendants may continue to provide any such services until January 1, 2023, pursuant to any agreements that are in effect as of July 25, 2022.

B.     Settling Defendants must not organize, speak at, participate in, or join in any form, whether in-person or virtually, any meeting of members of the same trade, industry, or profession that is not open to the public, so long as the subject of the meeting is related to either (i) Poultry Processing or (ii) the exchange, including by survey, of Confidential Competitively Sensitive Information among one or more persons.

C.     Settling Defendants must not Communicate non-publicly, directly or indirectly (including through the use of a common consultant), with any Poultry Processor or any of its officers, consultants, attorneys, or other representatives.

D.     Settling Defendants must not knowingly accept from any Poultry Processor or any of its officers, employees, agents, consultants, attorneys or other representatives any Confidential Competitively Sensitive Information about Compensation or any other aspect of Poultry Processing.

E.     Settling Defendants must not: (a) participate in any non-public discussion of Compensation in Poultry Processing; (b) facilitate the formation of any agreement related to

4

Compensation, including how to set or decide Compensation for workers or the amount of Compensation for workers, between or among Poultry Processors; (c) communicate with any person about types, amounts, or methods of setting or negotiating Compensation for Poultry Processing workers; or (d) knowingly accept any non-public Compensation information from or about any Poultry Processor.

F.  Notwithstanding the prohibitions in this Section IV, Settling Defendants are permitted to have discussions and receive and give information regarding the Poultry Processing industry in connection with pending or threatened litigation as a party or fact witness, either pursuant to subpoena or similar legal process, or for which one or both Settling Defendants has or have received prior approval in writing of the United States.

## V. REQUIRED CONDUCT

A.  Settling Defendants must provide the United States with a full and complete copy of any survey result or other project either Settling Defendant conducts between [settlement filing date] and December 31, 2022 that directly or indirectly involves or facilitates the exchange, including by survey, of Confidential Competitively Sensitive Information among one or more persons.

B.  Upon learning of any violation or potential violation of any of the terms and conditions contained in this Final Judgment, Settling Defendants must (i) promptly take appropriate action to investigate, and in the event of a violation, terminate or modify the activity so as to comply with the Final Judgment, (ii) maintain all documents related to any violation or potential violation of the Final Judgment for a period of five years or the duration of this Final Judgment, whichever is shorter, and (iii) maintain, and furnish to the United States at the United States' request, a log of (a) all such documents for which Settling Defendant claims protection

5

under the attorney-client privilege or the attorney work product doctrine, and (b) all potential and actual violations, even if no documentary evidence regarding the violations exists.

C. Within thirty days of learning of any such violation or potential violation of any of the terms and conditions contained in this Final Judgment, Settling Defendants must file with the United States a statement describing any violation or potential violation of any of the terms and conditions contained in this Final Judgment, which must include a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication.

D. Each of Meng and the most senior employee at WMS must certify in writing to the United States annually on each anniversary of the date of entry of this Final Judgment that Meng or WMS (as appropriate) has complied with the provisions of this Final Judgment.

## VI. SETTLING DEFENDANTS' COOPERATION

A. Each Settling Defendant must cooperate fully and truthfully with the United States in any investigation or litigation relating to the sharing of Compensation information among Poultry Processors, in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1, or Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended. WMS must use its best efforts to ensure that all current and former officers, directors, employees, and agents of WMS also fully and promptly cooperate with the United States. The full, truthful, and continuing cooperation of each Settling Defendant must include:

1. as requested on reasonable notice by the United States, being available for interviews, depositions, and providing sworn testimony to the United States orally and in writing;

2. producing, upon request of the United States, all documents, data, information, and other materials, wherever located not protected under the attorney-client privilege or attorney work product doctrine, in the possession, custody, or control of that Settling Defendant, and a log of documents protected by the attorney-client privilege or the attorney work product doctrine; and

3. testifying at trial and other judicial proceedings fully, truthfully, and under oath, when called upon to do so by the United States.

B. The obligations of each Settling Defendant to cooperate fully and truthfully with the United States as required in this Section VI shall cease upon the conclusion of the sooner of: (i) when all Defendants have settled all claims in this matter and all settlements have been entered by this Court and become final, or (ii) the conclusion of all investigations and litigation alleging that Settling and non-Settling Defendants shared Compensation information in violation of Section 1 of the Sherman Act, including exhaustion of all appeals or expiration of time for all appeals of any Court ruling in this matter.

C. Each Settling Defendant must take all necessary steps to preserve all documents and information relevant to the United States' investigations and litigation alleging that Settling Defendants and non-Settling Defendants shared Compensation information in violation of Section 1 of the Sherman Act until the United States provides written notice to the Settling Defendant that its obligations under this Section VI have expired.

D. Subject to the full, truthful, and continuing cooperation of each Settling Defendant, as required in this Section VI, Settling Defendants are discharged from any civil or criminal claim by the United States arising from the sharing of Compensation information among Poultry Processors, when the sharing of Compensation information (1) occurred before

7

the date of filing of the Complaint in this action, and (2) does not constitute or include an agreement to fix prices or divide markets.

E.    Paragraph VI(D) does not apply to any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), or obstruction of justice (18 U.S.C. § 1503, et seq.) by either Settling Defendant.

### VII.    COMPLIANCE INSPECTION

A.    For the purposes of determining or securing compliance with this Final Judgment or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Settling Defendants, Settling Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.    to have access during Settling Defendants' office hours to inspect and copy, or at the option of the United States, to require Settling Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Settling Defendants relating to any matters contained in this Final Judgment; and

2.    to interview, either informally or on the record, Settling Defendants' officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Settling Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Settling Defendants must submit written reports or respond to

8

written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## VIII.  PUBLIC DISCLOSURE

A.      No information or documents obtained pursuant to any provision this Final Judgment may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

B.      In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for disclosure of information obtained pursuant to any provision of this Final Judgment, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Settling Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

C.      If at the time that Settling Defendants furnish information or documents to the United States pursuant to any provision of this Final Judgment, Settling Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Settling Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Settling Defendants 10

calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## IX.     RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## X.      ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Settling Defendants agree that in a civil contempt action, a motion to show cause, or a similar action brought by the United States relating to an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Settling Defendants waive any argument that a different standard of proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleges was harmed by the challenged conduct. Settling Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C. In an enforcement proceeding in which the Court finds that Settling Defendants have violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

D. For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section X.

## XI. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment will expire 10 years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Settling Defendants that continuation of this Final Judgment is no longer necessary or in the public interest.

11

## XII. RESERVATION OF RIGHTS

The Final Judgment shall terminate only the claims expressly stated in the Complaint against Settling Defendants. The Final Judgment shall not in any way affect any other charges or claims filed by the United States subsequent to the commencement of this action.

## XIII. NOTICE

For purposes of this Final Judgment, any notice or other communication required to be filed with or provided to the United States shall be sent to the address set forth below (or such other address as the United States may specify in writing to any Settling Defendant):

Chief
Civil Conduct Task Force
U.S. Department of Justice
Antitrust Division
450 Fifth Street
Washington, DC 20530.

## XIV. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____June 5, 2023_____

/s/ Stephanie A. Gallagher
United States District Judge