**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

---

UNITED STATES OF AMERICA,

      *Plaintiff*,

 v.

CARGILL MEAT SOLUTIONS
CORPORATION, *et al.*,

      *Defendants*.

---

Civil Action No.: 22-cv-1821

**FINAL JUDGMENT**

  WHEREAS, Plaintiff, the United States of America, moved to amend its Complaint on May 17, 2023, alleging that Defendants George's, Inc. and George's Foods, LLC (collectively, "Settling Defendants") violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

  AND WHEREAS, the United States and Settling Defendants have consented to the entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

  AND WHEREAS, Settling Defendants agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Amended Complaint;

  AND WHEREAS, Settling Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

  NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

This Court has jurisdiction over the subject matter of this action and each of the parties named herein. The Amended Complaint states a claim upon which relief may be granted against the Settling Defendants under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II.    DEFINITIONS

As used in this Final Judgment:

A.    "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

B.    "George's, Inc." means Defendant George's, Inc., a privately-held company headquartered in Springdale, Arkansas, its successors and assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.    "George's Foods" means Defendant George's Foods, LLC, a company headquartered in Edinburg, Virginia that is an affiliate of George's, Inc., and its successors and assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.    "Communicate" means to discuss, disclose, transfer, disseminate, circulate, provide, request, solicit, send, receive or exchange information or opinion, formally or informally, directly or indirectly, in any manner, and regardless of the means by which it is accomplished, including orally or by written means of any kind, such as electronic communications, e-mails, facsimiles, telephone communications, voicemails, text messages, audio recordings, meetings, interviews, correspondence, exchange of written or recorded information, including surveys, or face-to-face meetings.

2

E.      "Compensation" means all forms of payment for work, including salaried pay, hourly pay, regular or ad hoc bonuses, over-time pay, and benefits, including healthcare coverage, vacation or personal leave, sick leave, and life insurance or disability insurance policies.

F.      "Competitively Sensitive Information" means information that is relevant to, or likely to have an impact on, at least one dimension of competition, including price, cost (including Compensation), output, quality, and innovation. Competitively Sensitive Information includes prices, strategic plans, amounts and types of Compensation, formula and algorithms used for calculating Compensation or proposed Compensation, other information related to costs or profits, markets, distribution, business relationships, customer lists, production capacity, and any confidential information the exchange of which could harm competition.

G.      "Consulting Firm" means any organization, including Webber, Meng, Sahl & Company, Inc. and Agri Stats, Inc., that gathers, sorts, compiles, and/or sells information about Compensation for Poultry Processing Workers, or provides advice regarding Compensation for Poultry Processing Workers; "Consulting Firm" does not include job boards, employment agencies or other entities that facilitate employment opportunities for employees.

H.      "Grower" means any person engaged in the business of raising and caring for live Poultry for slaughter by another, whether the Poultry is owned by such a person or by another, but not an employee of the owner of such Poultry.

I.      "Human Resources Staff" means any and all full-time, part-time, or contract employees of Settling Defendants, wherever located, whose job responsibilities relate in any way to hiring or retaining workers, employment, or evaluating, setting, budgeting for, administering,

or otherwise affecting Compensation for Poultry Processing Workers, and any other employee or agent working at any of those employees' direction.

  J.  "Including" means including, but not limited to.

  K.  "*Jien*" means the case *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-2521 (D. Md.).

  L.  "Management" means all directors and executive officers of Settling Defendants, or any other of Settling Defendants' employees with management or supervisory responsibilities related to hiring, employment, or Compensation of Poultry Processing plant labor, including Poultry Processing plant managers.

  M.  "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, governmental unit, or other legal entity.

  N.  "Poultry" means chicken or turkey.

  O.  "Poultry Processing" means the business of raising, slaughtering, cleaning, packing, packaging, and related activities associated with producing Poultry, including activities conducted by Poultry Processors at integrated feed mills, hatcheries, and processing plant facilities and the management of those activities.

  P.  "Poultry Processing Worker" means anyone paid any Compensation, directly or indirectly (such as through a temporary employment agency or third-party staffing agency), by a Poultry Processor related to Poultry Processing, including temporary workers, permanent workers, employees, workers paid hourly wages, workers paid salaried wages, and workers paid benefits.

  Q.  "Poultry Processor" means any person (1) who is engaged in Poultry Processing or (2) that has full or partial ownership or control of a Poultry Processing facility, or (3) that

provides Compensation to Poultry Processing Workers; "Poultry Processor" does not include staffing agencies or other entities that are not owned, operated, or controlled by a person engaged in Poultry Processing or that owns or controls, in full or part, Poultry Processing facilities, that make individuals available to work at Poultry Processing facilities.

R.      "Restitution Amount" means $5.8 million for Settling Defendants.

### III.    APPLICABILITY

This Final Judgment applies to Settling Defendants and all other persons in active concert or participation with them who receive actual notice of this Final Judgment.

### IV.    PROHIBITED CONDUCT

A.      Management and Human Resources Staff of each Settling Defendant must not, whether directly or indirectly, including through a Consulting Firm or other person:

1.      participate in any meeting or gathering (including in-person, virtual, and telephonic meetings and gatherings) related to Compensation for Poultry Processing Workers, or for any purpose related to Compensation for Poultry Processing Workers, at which any other Poultry Processor not owned or operated by Settling Defendants is present;

2.      Communicate Competitively Sensitive Information about Compensation for Poultry Processing Workers with any Poultry Processor not owned or operated by one or both Settling Defendants, including about types, amounts, or methods of setting or negotiating Compensation for Poultry Processing Workers;

3.      attempt to enter into, enter into, maintain, or enforce any Agreement with any Poultry Processor not owned or operated by one or both Settling Defendants about Poultry Processing Worker Compensation information, including how to set or decide Compensation or the types of Compensation for Poultry Processing Workers;

4.      Communicate Competitively Sensitive Information about Compensation for Poultry Processing Workers to any Poultry Processor not owned or operated by one or both Settling Defendants, including Communicating Competitively Sensitive Information about Compensation for Poultry Processing Workers to any Consulting Firm that produces reports regarding Compensation for Poultry Processing Workers that are shared with other Poultry Processors;

5.      use non-public, Competitively Sensitive Information about Compensation for Poultry Processing Workers from or about any Poultry Processor not owned or operated by one or both Settling Defendants; or

6.      encourage or facilitate the communication of Competitively Sensitive Information about Compensation for Poultry Processing Workers to or from any Poultry Processor not owned or operated by one or both Settling Defendants.

B.      Settling Defendants must not knowingly use from any Poultry Processor not owned or operated by one or both Settling Defendants or any of that Poultry Processor's officers, consultants, attorneys, or other representatives any Competitively Sensitive Information about Compensation for Poultry Processing Workers except as set forth in Section V or in connection with pending or threatened litigation as a party or fact witness, pursuant to court order, subpoena, or similar legal process, or for which any Settling Defendant has received specific prior approval in writing from the Division.

C.      The Settling Defendants must not retaliate against any employee or third party for disclosing information to the monitor described in Section VI, a government antitrust enforcement agency, or a government legislature.

6

## V.    CONDUCT NOT PROHIBITED

A.    Nothing in Section IV prohibits a Settling Defendant from Communicating, using, or encouraging or facilitating the Communication of, its Competitively Sensitive Information with an actual or prospective Poultry Processing Worker, or with the Poultry Processing Worker's labor union or other bargaining agent, except that, if a prospective Poultry Processing Worker is employed by another Poultry Processor, Settling Defendants' Communicating, using, or encouraging or facilitating the Communication of, Competitively Sensitive Information is excluded from the prohibitions of Section IV only insofar as is necessary to negotiate the Compensation of a prospective Poultry Processing Worker. Settling Defendants are not prohibited from internally using Competitively Sensitive Information received from a prospective Poultry Processing Worker who is employed by a Poultry Processor in the ordinary course of a legitimate hiring, retention, or off-boarding process, but Settling Defendants are prohibited from Communicating that Competitively Sensitive Information about Compensation for Poultry Processing Workers to another Poultry Processor.

B.    Nothing in Section IV prohibits the Settling Defendants from (1) sharing information with or receiving information from a staffing agency or entity that is not owned or controlled by any Poultry Processor, that facilitates employment, if necessary to effectuate an existing or potential staffing Agreement between the staffing agency or entity and the Settling Defendants; and (2) advertising Compensation through public job postings, billboards or help wanted advertisements.

C.    Nothing in Section IV prohibits Settling Defendants from, after securing advice of counsel and in consultation with their respective antitrust compliance officers, Communicating, using, encouraging or facilitating the Communication of, or attempting to enter into, entering

7

into, maintaining, or enforcing any Agreement to Communicate Competitively Sensitive Information relating to Compensation for Poultry Processing Workers with any Poultry Processor when such Communication or use is for the purpose of evaluating or effectuating a bona fide acquisition, disposition, or exchange of assets:

1. For all Agreements under Paragraph V(C) with any other Poultry Processor to Communicate Competitively Sensitive Information relating to Compensation for Poultry Processing Workers that a Settling Defendant enters into, renews, or affirmatively extends after the date of entry of this Final Judgment, the Settling Defendant must maintain documents sufficient to show:

     i.   the specific transaction or proposed transaction to which the sharing of Competitively Sensitive Information relating to Compensation for Poultry Processing Workers relates;

     ii.  the employees, identified with reasonable specificity, who are involved in the sharing of Competitively Sensitive Information relating to Compensation for Poultry Processing Workers;

     iii. with specificity the Competitively Sensitive Information relating to Compensation for Poultry Processing Workers Communicated; and

     iv.  the termination date or event of the sharing of Competitively Sensitive Information relating to Compensation for Poultry Processing Workers.

2. For Communications under Paragraph V(C), Settling Defendants must maintain copies of all materials required under Paragraph V(C)(1) for the duration of the Final Judgment, following entry into any Agreement to Communicate or receive Competitively Sensitive Information relating to Compensation for Poultry

Processing Workers, and must make such documents available to the United States and the monitor appointed under Section VI upon request.

D.     Nothing in Section IV prohibits Settling Defendants, after securing the advice of counsel and in consultation with the antitrust compliance officer, from engaging in conduct in accordance with the doctrine established in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), and their progeny.

E.     Nothing in Paragraph IV(A)(1) prohibits Settling Defendants from participating in meetings and gatherings in which they receive (but do not provide) information relating to Compensation that does not reflect or reveal information received from or about one or more Poultry Processors.

## VI.     MONITOR

A.     Upon application of the United States, which Settling Defendants may not oppose, the Court will appoint a monitor selected by the United States and approved by the Court. Within 30 calendar days after entry of the Stipulation and Order in this case, the Settling Defendants may together propose to the United States a pool of three candidates to serve as the monitor, and the United States may consider the Settling Defendants' perspectives on the Settling Defendants' three proposed candidates or any other candidates identified by the United States. The United States retains the right, in its sole discretion, either to select the monitor from among the three candidates proposed by the Settling Defendants or to select a different candidate for the monitor.

B.     The monitor will have the power and authority to monitor: (1) Settling Defendants' compliance with the terms of this Final Judgment entered by the Court, including

9

compliance with Paragraph IV(C), and (2) Settling Defendants' compliance, regarding events occurring after entry of the Stipulation and Order in this case (even if such events began before that date), with the U.S. federal antitrust laws relating to Poultry Processing, Poultry Processing Workers, Growers, integrated Poultry feed, hatcheries, the transportation of Poultry and Poultry products, and the sale of Poultry and Poultry Processing products. The monitor may also have other powers as the Court deems appropriate. The monitor's power and authority will not extend to monitoring the processing of meat or material other than Poultry, even if such processing of meat or material other than Poultry takes place in a facility or location that also engages in Poultry Processing. The monitor will have no right, responsibility or obligation for the operation of Settling Defendants' businesses, and the Settling Defendants do not have any obligation to seek the monitor's approval or authorization before making business decisions. No attorney-client relationship will be formed between the Settling Defendants and the monitor.

C.      The monitor will serve at the cost and expense of Settling Defendants pursuant to a written Agreement, on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion.

D.      The monitor may hire, at the cost and expense of Settling Defendants, any agents and consultants, including attorneys and accountants, that are reasonably necessary in the monitor's judgment to assist with the monitor's duties. These agents or consultants will be solely accountable to the monitor and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion.

E.      The compensation of the monitor and agents or consultants retained by the monitor must be on reasonable and customary terms commensurate with the individuals'

10

experience and responsibilities. If the monitor and Settling Defendants are unable to reach agreement on the monitor's compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the monitor, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring any agents or consultants, the monitor must provide written notice of the hiring and the rate of compensation to Settling Defendants and the United States.

F.      The monitor must account for all costs and expenses incurred.

G.      The monitor will have the authority to take such reasonable steps as, in the United States' view, may be necessary to accomplish the monitor's duties. The monitor may seek information from Settling Defendants' personnel, including in-house counsel, compliance personnel, and internal auditors. If the monitor has confidence in the quality of the resources, the monitor may consider the products of Settling Defendants' processes, such as the results of studies, reviews, sampling and testing methodologies, audits, and analyses conducted by or on behalf of any Settling Defendant, as well as any of Settling Defendants' internal resources (e.g., legal, compliance, and internal audit), which may assist the monitor in carrying out the monitor's duties). The monitor may take into account (a) the extent to which the Settling Defendants have dedicated internal personnel to ensure compliance with this Order, (b) the quality of the compliance work performed by such internal personnel, and (c) the availability and quality of analyses conducted by such internal personnel in determining or modifying an appropriate work plan that enables the monitor to accomplish his or her duties without unnecessary involvement in the day-to-day operation of the business. The Settling Defendants will establish a policy, annually communicated to all employees, that employees may disclose any information to the monitor, without reprisal for such disclosure.

H.  Settling Defendants must use best efforts to cooperate fully with the monitor. Subject to reasonable protection for trade secrets and confidential research, development, or commercial information, or any applicable privileges or laws, Settling Defendants must (1) provide the monitor and agents or consultants retained by the monitor with full and complete access to all personnel, books, records, and facilities, and (2) use reasonable efforts to provide the monitor with access to Settling Defendants' former employees, Growers, third-party vendors, agents, and consultants. Settling Defendants may not take any action to interfere with or to impede accomplishment of the monitor's responsibilities.

I.  If Settling Defendants seek to withhold from the monitor access to anything or anyone on the basis of attorney-client privilege or the attorney work-product doctrine, or because Settling Defendants reasonably believe providing the monitor with access would be inconsistent with applicable law, the Settling Defendants must work cooperatively with the monitor to resolve the issue to the satisfaction of the monitor. If Settling Defendants and the monitor do not reach a resolution of the issue to the satisfaction of the monitor within 21 calendar days, Settling Defendants must immediately provide written notice to the United States and the monitor. The written notice must include a description of what is being withheld and the Settling Defendants' legal basis for withholding access.

J.  Except as specifically provided by Paragraph VI(I), Settling Defendants may not object to requests made or actions taken by the monitor in fulfillment of the monitor's responsibilities under this Final Judgment or any other Order of the Court on any ground other than malfeasance by the monitor; *provided, however*, that if Settling Defendants believe in good faith that a request or action by the monitor pursuant to the monitor's authority under Paragraph VI(B)(2) exceeds the scope of the monitor's authority or is unduly burdensome, the Settling

12

Defendants may object to the United States. Objections by Settling Defendants under this Paragraph VI(J) regarding a request or action exceeding the monitor's scope must be conveyed in writing to the United States and the monitor within 10 calendar days of the monitor's request or action that gives rise to Settling Defendants' objection. Objections by Settling Defendants under this Paragraph VI(J) regarding a request or action being unduly burdensome must be made, with specificity, to the monitor within seven calendar days of the request or action; if the Settling Defendants and the monitor cannot resolve the objections regarding a request or action being unduly burdensome, within 21 days of the request or action the Settling Defendants must convey their objections in writing to the United States. All objections will be resolved by the United States, in its sole discretion.

K.      The monitor must investigate and report on Settling Defendants' compliance with this Final Judgment, including those provisions governing Settling Defendants' communications with Poultry Processors and third parties related to Poultry Processing Worker Compensation information, and Settling Defendants' compliance, regarding events occurring after entry of the Stipulation and Order in this case (even if such events began before that date), with the U.S. federal antitrust laws relating to Poultry Processing, Poultry Processing Workers, Growers, integrated Poultry feed, hatcheries, the transportation of Poultry and Poultry products, and the sale of Poultry and Poultry Processing products.

L.      The monitor must provide periodic written reports to the United States and the Settling Defendants setting forth Settling Defendants' efforts to comply with their obligations under this Final Judgment and the U.S. federal antitrust laws relating to Poultry Processing, Poultry Processing Workers, Growers, integrated Poultry feed, hatcheries, the transportation of Poultry and Poultry products, and the sale of Poultry and Poultry Processing products. The

13

monitor must provide written reports every six months for the first two years of the term of the monitor's appointment after which the monitor must provide written reports on an annual basis. The monitor must provide the first written report within six months of the monitor's appointment by the Court. The United States, in its sole discretion, may change the frequency of the monitor's written reports at any time, communicate or meet with the monitor at any time, and make any other requests of the monitor as the United States deems appropriate.

M.    Within 30 days after appointment of the monitor by the Court, and on a yearly basis thereafter, the monitor must provide to the United States and Settling Defendants a written work plan for the monitor's proposed review. Settling Defendants may provide comments on a written work plan to the United States and the monitor within 14 calendar days after receipt of the written work plan. The United States retains the right, in its sole discretion, to request changes or additions to a work plan at any time. Any disputes between Settling Defendants and the monitor with respect to any written work plan will be decided by the United States in its sole discretion.

N.    The monitor will serve for the full term of this Final Judgment, unless the United States, in its sole discretion, determines a different period is appropriate. After three years from the date this Final Judgment was entered, the United States, in its sole discretion, will determine whether continuation of the monitor's full term is appropriate, or whether to suspend the remainder of the term.

O.    If the United States determines that the monitor is not acting diligently or in a reasonably cost-effective manner or if the monitor becomes unable to continue in their role for any reason, the United States may recommend that the Court appoint a substitute.

## VII.    REQUIRED CONDUCT

A.    Within 10 days of entry of this Final Judgment, Settling Defendants must appoint an antitrust compliance officer who is an internal employee or officer of the Settling Defendants and identify to the United States the antitrust compliance officer's name, business address, telephone number, and email address. Within 45 days of a vacancy in the antitrust compliance officer position, Settling Defendants must appoint a replacement, and must identify to the United States the antitrust compliance officer's name, business address, telephone number, and email address. Settling Defendants' initial or replacement appointment of an antitrust compliance officer is subject to the approval of the United States, in its sole discretion.

B.    Settling Defendants' antitrust compliance officer must have, or must retain outside counsel who has, the following minimum qualifications:

1.    be an active member in good standing of the bar in any U.S. jurisdiction; and

2.    have at least five years' experience in legal practice, including experience with antitrust matters.

C.    Settling Defendants' antitrust compliance officer must, directly or through the employees or counsel working at the direction of the antitrust compliance officer:

1.    within 14 days of entry of the Final Judgment, furnish to the relevant Settling Defendants' Management, all Human Resources Staff, and Settling Defendants' retained Consulting Firms and utilized temporary employment agencies a copy of this Final Judgment, the Competitive Impact Statement filed by the United States with the Court, and a cover letter in a form attached as Exhibit 1;

15

2.      within 14 days of entry of the Final Judgment, in a manner to be devised by Settling Defendants and approved by the United States, in its sole discretion, provide Settling Defendants' Management, all Human Resources Staff, and Settling Defendant's retained Consulting Firms and utilized temporary employment agencies reasonable notice of the meaning and requirements of this Final Judgment;

3.      annually brief Settling Defendants' Management, Human Resources Staff, and Settling Defendants' retained Consulting Firms and utilized temporary employment agencies on the meaning and requirements of this Final Judgment and the U.S. federal antitrust laws;

4.      brief any person who succeeds a person in any position identified in Paragraph VII(C)(3) within 60 days of such succession;

5.      obtain from each person designated in Paragraph VII(C)(3) or VII(C)(4), within 30 days of that person's receipt of the Final Judgment, a certification that the person (i) has read and understands and agrees to abide by the terms of this Final Judgment; (ii) is not aware of any violation of the Final Judgment or of any violation of any U.S. antitrust law that has not been reported to Settling Defendants' Management; and (iii) understands that failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court;

6.      annually communicate to Settling Defendants' Management and Human Resources Staff, and Settling Defendants' retained Consulting Firms and utilized temporary employment agencies that they may disclose to the antitrust compliance officer, without reprisal for such disclosure, information concerning any violation or potential violation of this Final Judgment or the U.S. federal antitrust laws by Settling Defendants; and

       7.      maintain for five years or until expiration of the Final Judgment, whichever is longer, a copy of all materials required to be issued under Paragraph VII(C), and furnish them to the United States within 10 days if requested to do so, except documents protected under the attorney-client privilege or the attorney work-product doctrine.

    D.    Each Settling Defendant must:

       1.      within 30 days of the filing of the Amended Complaint, Proposed Final Judgment, or Competitive Impact Statement in this action, whichever is latest, provide notice to every Poultry Processor and to every Consulting Firm with which that Settling Defendant has a contract or Agreement in place relating to Compensation for Poultry Processing Workers, of the Amended Complaint, Proposed Final Judgment, and Competitive Impact Statement in a form and manner to be proposed by Settling Defendants and approved by the United States, in its sole discretion. Settling Defendants must provide the United States with their proposals, including their lists of recipients, within 10 days of the filing of the Amended Complaint;

       2.      for all materials required to be furnished under Paragraph VII(C) that Settling Defendants claim are protected under the attorney-client privilege or the attorney work-product doctrine, Settling Defendants must furnish to the United States a privilege log;

       3.      upon Management or the antitrust compliance officer learning of any violation or potential violation of any of the terms and conditions contained in this Final Judgment, promptly take appropriate action to terminate or modify the activity so as to comply with this Final Judgment and maintain, and produce to the United States upon request, all documents related to any violation or potential violation of this Final Judgment;

       4.      file with the United States a statement describing any violation or potential violation within 30 days of a violation or potential violation becoming known to Management or

the antitrust compliance officer. Descriptions of violations or potential violations of this Final Judgment must include, to the extent practicable, a description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication;

5.      have their Chief Executive Officers or President certify to the United States annually on the anniversary date of the entry of this Final Judgment that the Settling Defendants have complied with all of the provisions of this Final Judgment, and list all Agreements subject to Paragraph V(C) from the prior year; and

6.      maintain and produce to the United States upon request: (i) a list identifying all employees having received the antitrust briefings required under Paragraphs VII(C)(3) and VII(C)(4); and (ii) copies of all materials distributed as part of the antitrust briefings required under Paragraph VII(C)(3) and VII(C)(4). For all materials requested to be produced under this Paragraph VII(D)(6) that a Settling Defendant claims is protected under the attorney-client privilege or the attorney work-product doctrine, Settling Defendant must furnish to the United States a privilege log.

G.      The term "potential violation" as used in this Section VII does not include the discussion with counsel, the antitrust compliance officer, or anyone working at counsel's or the antitrust compliance officer's direction, regarding future conduct.

## VIII.   REQUIRED COOPERATION

A.      Settling Defendants must cooperate fully and truthfully with the United States in any investigation or litigation relating to the sharing of Poultry Processing Worker Compensation information among Poultry Processors, in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1. Settling Defendants must use their best efforts to ensure that all

current officers, directors, employees, and agents also fully and promptly cooperate with the United States and use reasonable efforts to ensure that all former officers, directors, employees, and agents also fully and promptly cooperate with the United States. The full, truthful, and continuing cooperation of Settling Defendants must include:

      1.     as requested on reasonable notice by the United States, being available for interviews, depositions, and providing sworn testimony to the United States orally and in writing as the United States so chooses;

      2.     producing, upon request of the United States, all documents, data, information, and other materials, wherever located, not protected under the attorney-client privilege or attorney work product doctrine, in the possession, custody, or control of that Settling Defendant, and a privilege log of any materials the Settling Defendant claims are protected under the attorney-client privilege or the attorney work-product doctrine; and

      3.     testifying at trial and other judicial proceedings fully, truthfully, and under oath, when called upon to do so by the United States.

      B.     The obligations of Settling Defendants to cooperate fully and truthfully with the United States as required in this Section VIII will cease upon the conclusion of all investigations and litigation related to the sharing of Poultry Processing Worker Compensation information in violation of Section 1 of the Sherman Act, including exhaustion of all appeals or expiration of time for all appeals of any Court ruling in this matter, or the expiration of the Final Judgment, whichever is later.

      C.     Settling Defendants must take all necessary steps to preserve all documents and information relevant to the United States' investigations and litigation alleging that Settling Defendants and other Poultry Processors shared Poultry Processing Worker Compensation

information in violation of Section 1 of the Sherman Act until the United States provides written notice to the Settling Defendants that their obligations under this Section VIII have expired.

D.      Subject to the full, truthful, and continuing cooperation of each Settling Defendant, as required under this Section VIII, Settling Defendants are fully and finally discharged and released from any civil or criminal claim by the United States arising from the sharing of Poultry Processing Worker Compensation information among Poultry Processors prior to the date of filing of the Amended Complaint in this action; *provided, however*, that this discharge and release does not include any criminal claim arising from any subsequently-discovered evidence of an Agreement to fix prices or wages or to divide or allocate markets, including to allocate Poultry Processing Workers.

E.      Paragraph VIII(D) does not apply to any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), or obstruction of justice (18 U.S.C. § 1503, et seq.) by any Settling Defendant.

## IX.      COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Settling Defendants, Settling Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.      to have access during Settling Defendants' office hours to inspect and copy, or at the option of the United States, to require Settling Defendants to provide electronic

copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Settling Defendants relating to any matters contained in this Final Judgment; and

2. to interview, either informally or on the record, Settling Defendants' officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Settling Defendants.

B. Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Settling Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## X. RESTITUTION

A. Within 60 days of entry of this Final Judgment, Settling Defendants must place funds equal to 10% of their Restitution Amount into an escrow account selected by the United States, in its sole discretion.

B. If the *Jien* Court grants a motion for final approval of a settlement and certification of a settlement class with respect to Settling Defendants' settlement with the *Jien* plaintiffs, the entire balance of Settling Defendants' escrow account, including any accrued interest and less any administrative costs, must be returned to Settling Defendants.

C. If Settling Defendants have not entered into a settlement agreement with the plaintiffs in *Jien* before entry of this Final Judgment, or if preliminary or final approval of a settlement is denied, or if certification of a settlement class is denied, or if a settlement is terminated or rescinded for any reason, Settling Defendants, within 21 days after (1) entry of this Final Judgment in the case of Settling Defendants having not reached a settlement agreement

with the plaintiffs in *Jien*, or (2) any order denying settlement approval or certification of the

settlement class or any termination or rescinding of a settlement, must deposit into their escrow

account an amount equal to their Restitution Amount. This amount must be in addition to the

initial 10% payment made pursuant to Paragraph X(A) and any accrued interest already present

in the Settling Defendants' escrow account. Upon full funding of the escrow account, the entire

balance of the escrow account, including any accrued interest, must be released to the United

States for distribution to affected Poultry Processing Workers in the form of restitution and

payment for expenses related to distribution. In the event that preliminary or final approval of a

settlement or class certification is denied, or the settlement agreement is rescinded or terminated,

for reasons that the United States in its sole discretion believes to be curable, the United States,

in its sole discretion, may agree to one or more extensions of the 21-day period in this Paragraph

X(C).

      D.     The claims and disbursement process will be established in the sole discretion of

the United States. Settling Defendants must reimburse the United States for any costs associated

with claims administration or remittance of restitution, including fees payable to a third-party

claims administrator hired at the United States' sole discretion, that extend beyond the sum of the

initial 10% payments made by Settling Defendants under Paragraph X(A). Contributions beyond

the initial 10% payments will be made on a pro rata basis based on Settling Defendants'

Restitution Amount.

      E.     Upon completion of the restitution payments, the United States must return any

funds remaining in the escrow account to the Settling Defendants, on a pro rata basis based on

Settling Defendants' Restitution Amount.

## XI.     PUBLIC DISCLOSURE

A.      No information or documents obtained pursuant to any provision in this Final Judgment, including reports the monitor provides to the United States pursuant to Paragraphs VI(K) and VI(L), may be divulged by the United States or the monitor to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law. In the event that the monitor should receive a subpoena, court order or other court process seeking production of information or documents obtained pursuant to any provision in this Final Judgment, including reports the monitor provides to the United States pursuant to Paragraphs VI(K) and VI(L), the applicable disclosing party shall notify Settling Defendants immediately and prior to any disclosure, so that Settling Defendants may address such potential disclosure and, if necessary, pursue alternative legal remedies, including if deemed appropriate by Settling Defendants, intervention in the relevant proceedings.

B.      In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for disclosure of information obtained pursuant to any provision of this Final Judgment, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Settling Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

23

C.    If at the time that Settling Defendants furnish information or documents to the United States pursuant to any provision of this Final Judgment, Settling Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Settling Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Settling Defendants 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XII.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.    ENFORCEMENT OF FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Settling Defendants agree that in a civil contempt action, a motion to show cause, or a similar action brought by the United States relating to an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Settling Defendants waive any argument that a different standard of proof should apply.

B.    This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleges was

harmed by the challenged conduct. Settling Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In an enforcement proceeding in which the Court finds that any Settling Defendant has violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce this Final Judgment against a Settling Defendant, whether litigated or resolved before litigation, that Settling Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

D.      For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Settling Defendant violated this Final Judgment before it expired, the United States may file an action against that Settling Defendant in this Court requesting that the Court order: (1) Settling Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Settling Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIII.

## XIV. EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire seven years from the date of its entry, except that after three years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Settling Defendants that continuation of this Final Judgment is no longer necessary or in the public interest. *Provided, however*, that the obligations under Section X will continue as long as one or more of the escrow accounts created under Section X remain open.

## XV. RESERVATION OF RIGHTS

The Final Judgment terminates only the claims expressly stated in the Amended Complaint. The Final Judgment does not in any way affect any other charges or claims filed by the United States subsequent to the commencement of this action, including any charges or claims relating to Growers, integrated Poultry feed, hatcheries, Poultry products, the transportation of Poultry and Poultry products, and the sale of Poultry and Poultry products.

## XVI. NOTICE

For purposes of this Final Judgment, any notice or other communication required to be filed with or provided to the United States must be sent to the address set forth below (or such other address as the United States may specify in writing to any Settling Defendant):

Chief
Civil Conduct Task Force
U.S. Department of Justice
Antitrust Division
450 Fifth Street
Washington, DC 20530
ATRJudgmentCompliance@usdoj.gov.

## XVII.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The Settling Defendants have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date:  ___August 22, 2023___


                    /s/ Stephanie A. Gallagher
                    _____
                    United States District Judge

（

## Exhibit 1

[Version for Management and Human Resources Staff]

[Letterhead of Settling Defendant]

[Name and Address of Antitrust Compliance Officer]

Dear [XX]:

      I am providing you this letter to make sure you know about a court order recently entered by a federal judge in [jurisdiction]. This order applies to [Settling Defendant's] Human Resources Staff and Management as defined in Section II (Definitions) of the attached Final Judgment, including you, so it is important that you understand the obligations it imposes on us. [CEO or President Name] has asked me to let each of you know that s/he expects you to take these obligations seriously and abide by them.

      Under the order, we are largely prohibited from communicating with other poultry processors, whether directly or indirectly (such as through a consulting agency) about poultry processing plant worker compensation—pay or benefits. This means you may not discuss with any poultry processor or employee of a poultry processor any non-public information about our plant workers' wages, salaries, and benefits, and you may not ask any poultry processor or employee of a poultry processor for any non-public information about their plant workers' wages, salaries, and benefits. In addition, we are largely prohibited from sending any non-public information about our processing plant workers' wages and benefits to any third party, such as a consulting agency. There are only limited exceptions to these prohibitions, which are outlined in Section V (Conduct Not Prohibited) of the Final Judgment.

      A copy of the court order is attached. Please read it carefully and familiarize yourself with its terms. The order, rather than the above description, is controlling. If you have any

questions about the order or how it affects your activities, please contact me. Thank you for your cooperation.

Sincerely,
[Settling Defendant's Antitrust Compliance Officer]

*       *       *

[Version for Consulting Firms and temporary employment agencies]

[Letterhead of Settling Defendant]

[Name and Address of Antitrust Compliance Officer]

Dear [XX]:

I am providing you this letter to make sure you know about a court order recently entered by a federal judge in [jurisdiction]. This order applies to [Settling Defendant's] Consulting Firms as defined in Section II (Definitions) of the attached Final Judgment and temporary employment agencies, including your agency, so it is important that you understand the obligations it imposes on us. [CEO or President Name] has asked me to let each of you know that s/he expects you to take these obligations seriously and abide by them.

Under the order, we are largely prohibited from communicating with other poultry processors, whether directly or indirectly (such as through a Consulting Firm or temporary employment agency, including your agency) about poultry processing plant worker compensation—pay or benefits. This means you may not disclose to us any non-public information about another poultry processor's plant workers' wages, salaries, and benefits, and you may not provide any non-public information about our poultry plant workers' wages, salaries, and benefits to another poultry processor. In addition, we are largely prohibited from sending any non-public information about our processing plant workers' wages and benefits to

29

any third party, such as a Consulting Firm or temporary employment agency, including your agency. There are only limited exceptions to these prohibitions, which are outlined in Section V (Conduct Not Prohibited) of the Final Judgment.

A copy of the court order is attached. Please read it carefully and familiarize yourself with its terms. The order, rather than the above description, is controlling. If you have any questions about the order or how it affects your activities, please contact me. Thank you for your cooperation.

Sincerely,
[Settling Defendant's Antitrust Compliance Officer]