**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Civil Action No.: 1:22-cv-01821-SAG |
| CARGILL MEAT SOLUTIONS CORPORATION, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM IN OPPOSITION TO AGRI STATS' MOTIONS TO INTERVENE

## <u>TABLE OF CONTENTS</u>

**BACKGROUND** ................................................................................................................**2**

**LEGAL STANDARD** ........................................................................................................**4**

**ARGUMENT** .....................................................................................................................**5**

    I. Agri Stats Has No Right to Intervene .......................................................................5

        A. Agri Stats' Motions Are Not Timely Because They Were Filed Almost 20 Months
        After Entry of the First Final Judgment ...............................................................6

            1. *Agri Stats Seeks to Intervene at a Very Late Stage of These Proceedings* ..........6

            2. *Agri Stats' Delay Would Prejudice the United States and the Poultry
            Processing Workers That the Final Judgments Protect* .......................................8

            3. *Agri Stats Offers No Valid Excuse for Its Delay*................................................9

        B. Agri Stats Lacks a Cognizable Interest in This Enforcement Action ..........................10

        C. Denying the Motion Will Not Impair Agri Stats' Ability to Protect Its Interests.........13

        D. Defendants Adequately Represent Agri Stats' Interests.............................................13

    II. Agri Stats Is Not Entitled to Permissive Intervention ...........................................16

    **CONCLUSION** ...............................................................................................................**19**

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                 **Page**

*Alfred A. Knopf, Inc. v. Colby*,
  509 F.2d 1362 (4th Cir. 1975) .......................................................................12

*Alt v. EPA*,
  758 F.3d 588 (4th Cir. 2014) ...................................................................6, 8, 16

*Am. Coll. of Obstetricians & Gynecologists v. U.S. F.D.A.*,
  467 F. Supp. 3d 282 (D. Md. 2020) ..............................................................17

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022) ........................................................................................16

*Boothe v. Northstar Realty Fin. Corp., Inc.*,
  2019 WL 587419 (D. Md. Feb. 13, 2019) ................................................ 17-18

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) ...............................................................................................7

*Feller v. Brock*,
  802 F.2d 722 (4th Cir. 1986) ..........................................................................18

*FTC v. Lin*,
  66 F.4th 164 (4th Cir. 2023) .............................................................................8

*Gould v. Alleco Inc.*,
  883 F.2d 281 (4th Cir. 1989) ..................................................................... 7-8, 11

*Haw., Dep't of Hum. Servs. v. U.S. Dep't of Educ., Rehab. Servs. Admin.*,
  2009 WL 10677746 (D. Haw. Dec. 23, 2009) ..................................................7

*Houston Gen. Ins. Co. v. Moore*,
  193 F.3d 838 (4th Cir. 1999) .............................................................5, 6, 10, 13

*Hispanic Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*,
  2022 WL 980176 (D. Md. Mar. 31, 2022) .......................................................6

*In re Sanctuary Belize Litig.*,
  2022 WL 2528428 (D. Md. July 7, 2022) ...................................................8, 11

*McClenny Moseley & Assocs., P.L.L.C.*,
  2024 WL 2874371 (5th Cir. June 7, 2004) ......................................................8

*NAACP v. New York*,
  413 U.S. 345 (1973) ...........................................................................................5

*Nat'l R.R. Passenger Corp. v. Commonwealth of Pa. Pub. Util. Comm'n,*
1991 WL 993 (E.D. Pa. Jan. 4, 1991) .................................................................7

*Nat'l Soc. of Pro. Eng'rs v. United States,*
435 U.S. 679 (1978) ...............................................................................11, 12

*Nat. Res. Def. Council, Inc. v. Coit,*
2021 WL 9440424 (D. Md. Nov. 23, 2021) ......................................................18

*Oak Plaza, LLC v. Buckingham,*
2024 WL 3729108 (D. Md. Aug. 8, 2024) ........................................................14

*Reaching Hearts Int'l, Inc. v. Prince George's Cnty.,*
2011 WL 4459095 (D. Md. Sept. 23, 2011) ...............................................7, 8, 17

*Republican Nat'l Comm. v. N.C. State Bd. of Elections,*
2024 WL 4349904 (E.D.N.C. Sept. 30, 2024) ..................................................14

*Scardelletti v. Debarr,*
265 F.3d 195 (4th Cir. 2001) ...........................................................................7

*Stuart v. Huff,*
706 F.3d 345 (4th Cir. 2013) ....................................................................5, 9, 16

*Subaqueous Expl. & Archeology Ltd. v. Unidentified, Wrecked and Abandoned Vessel,*
577 F. Supp. 597 (D. Md. 1983)...................................................................16-17

*Teague v. Bakker,*
931 F.2d 259 (4th Cir. 1991) ..........................................................................11

*Thee Aguila, Inc. v. Penn Star Ins. Co.,*
2021 WL 5748901 (C.D. Cal. Nov. 1, 2021) ......................................................7

*Tillman Infrastructure LLC v. Bd. of Supervisors of Culpeper Cnty., Va.,*
2022 WL 15440344 (W.D. Va. May 16, 2022) ..................................................11

*United States v. Duke Energy Corp.,*
218 F.R.D. 468 (M.D.N.C. 2003).....................................................................15

*United States et al. v. E.I. du Pont de Nemours & Co.,*
366 U.S. 316 (1961)........................................................................................11

*United States et al. v. G. Heileman Brewing Co.,*
563 F. Supp. 642 (D. Del. 1983).......................................................................18

*United States et al. v. Google,*
2025 WL 372072 (D.D.C. Jan. 27, 2025)............................................................9

*Virginia v. Westinghouse Elec. Corp.*,
    542 F.2d 214 (4th Cir. 1976) ..................................................................................... 13-14,15

## STATUTES

15 U.S.C. § 16 .................................................................................................................3

Fed R. Civ. P. 24 ...................................................................................................5, 16, 17

After sitting on the sidelines of this case for over two-and-a-half years, Agri Stats now seeks to intervene. The Court should deny Agri Stats' request because it comes far too late, intervention would unnecessarily prolong these proceedings, and its interests are already being zealously represented by Defendants. Agri Stats is a third party to this proceeding and has chosen to remain so; the motion should be denied.

In this proceeding, the United States seeks to hold two poultry processors—Wayne-Sanderson and George's ("Defendants")—to the obligations they voluntarily assumed years ago, in July 2022 and May 2023. Among other things, Defendants committed not to "Communicate" competitively sensitive compensation information with "any Consulting Firm"—a term that explicitly included movant Agri Stats. *See* ECF 2-2 at 4, 7; ECF 45-2 at 3, 6. The Court entered Final Judgments ordering Defendants to abide by those commitments in June and August 2023. *See* ECF 59 at 3-4, 7; ECF 77 at 2-3, 6. Agri Stats concedes that its counsel reviewed these consent decrees when they were proposed in July 2022 and May 2023. ECF 101-5, ¶¶ 16-17 (Declaration of Agri Stats President Eric Scholer). Yet Agri Stats twice chose not to participate in the notice-and-comment process for the Final Judgments or intervene before this Court's entry of those Final Judgments. Agri Stats only now seeks intervention to support Defendants' violations of their consent decree obligations and permit Defendants to continue sending competitively sensitive compensation information to Agri Stats and continue receiving reports from Agri Stats that contain the competitively sensitive compensation information of Defendants' poultry competitors.

Neither intervention as of right under Rule 24(a) nor permissive intervention under Rule 24(b) is warranted here. As a threshold matter, Agri Stats' motion is untimely. Agri Stats has known about this matter, including the collateral consequences of the Final Judgments on its business interests, for *years*. Agri Stats' lengthy delay should not be excused merely because it

now disagrees with the enforcement of the consent decrees. Agri Stats sat on its opportunities to comment throughout multiple Tunney Act notice periods and should not now be rewarded for doing so, especially when intervention at this late stage threatens to prejudice the United States and affected poultry workers by delaying prompt enforcement of the consent decrees.

Agri Stats fails to satisfy the other prerequisites for intervention too. The consent decrees impose no legal obligations upon Agri Stats. The United States does not seek "direct relief" against Agri Stats, as it erroneously contends. Rather, the United States seeks to hold Wayne-Sanderson and George's to *their* commitments to refrain from exchanging competitively sensitive compensation information with data brokers, including Agri Stats, that are deeply enmeshed with Defendants' competitors. Finally, Wayne-Sanderson and George's—who share and have already advanced Agri Stats' implausible interpretation of the consent decrees—are adequately representing Agri Stats' interests because the three companies' interests are aligned here. For these reasons and others that follow, this Court should deny Agri Stats' motions to intervene.

## BACKGROUND

In July 2022, the United States filed the Complaint against, among others, Sanderson Farms, Inc., and Wayne Farms, LLC ("Wayne-Sanderson"), alleging that Wayne-Sanderson used data consultants to exchange "detailed and granular" compensation information with competitors. ECF 1, ¶ 7. At the same time, the United States filed a Proposed Final Judgment, agreed to by Wayne-Sanderson, that included a prohibition on Wayne-Sanderson "Communicat[ing] Competitively Sensitive Information about Compensation for Poultry Processing Workers," including with "Consulting Firm[s]." ECF 2-2 at 7. The term "Consulting Firm" was defined specifically to include Agri Stats, Inc. *Id.* at 4. This prohibition became binding on Wayne-

2

Sanderson (on an interim basis) upon entry of the Court's Stipulation and Order on July 26, 2022. ECF 11.

The United States added similar claims against George's, Inc., and George's Foods, LLC ("George's") on May 17, 2023. ECF 48. That same day, the United States filed a Proposed Final Judgment containing an identical prohibition on George's communicating competitively sensitive compensation information with Consulting Firms, a term again defined to include Agri Stats. ECF 45-2 at 3, 6. Later that day, the Court entered a Stipulation and Order binding George's to the terms of the Proposed Final Judgment. ECF 46.

Before these consent decrees could become final, the United States had to comply with the requirements of the Tunney Act, 15 U.S.C. § 16, including by providing notice to the public, considering comments provided, and explaining why entry of the Proposed Final Judgments would be in the public interest. The United States published notices in the Federal Register, required Defendants to publish notices in the *Washington Post*, and issued press releases.[1] Additionally, under the terms of the Proposed Final Judgments themselves, Defendants were required to "provide notice . . . to every Consulting Firm with which that Settling Defendant has a contract or Agreement in place relating to Compensation for Poultry Processing Workers, of the [Complaint

---

[1] *See* 87 Fed. Reg. 57028 (Sept. 16, 2022) (Wayne-Sanderson); 88 Fed. Reg. 34030 (May 25, 2023) (George's); Press Release, Department of Justice, *Justice Department Files Lawsuit and Proposed Consent Decrees to End Long-Running Conspiracy to Suppress Worker Pay at Poultry Processing Plants and Address Deceptive Abuses Against Poultry Growers* (July 25, 2022), https://www.justice.gov/archives/opa/pr/justice-department-files-lawsuit-and-proposed-consent-decrees-end-long-running-conspiracy; Press Release, Department of Justice, *Justice Department Files Proposed Amended Complaint and Consent Decree with Fourth Poultry Processor, Further Addressing Long-Running Conspiracy to Suppress Workers' Compensation* (May 17, 2023), https://www.justice.gov/archives/opa/pr/justice-department-files-proposed-amended-complaint-and-consent-decree-fourth-poultry.

or Amended Complaint], Proposed Final Judgment, and Competitive Impact Statement." ECF 2-2 at 19 (Wayne-Sanderson); ECF 45-2 at 17 (George's).

Agri Stats concedes that its counsel reviewed the consent decrees when they were first proposed in July 2022 and May 2023. ECF 101-5, ¶¶ 16-17 (Declaration of Agri Stats President Eric Scholer). As such, Agri Stats had two separate opportunities to present any views or concerns regarding the terms of the proposed decrees but chose not to participate. The 60-day comment period on the proposed Wayne-Sanderson decree began on September 15, 2022; the United States received five comments, none from Agri Stats. ECF 58-1 at 3; ECF 101-5, ¶ 18. Another 60-day comment period started on May 22, 2023, for the proposed George's decree; the United States received no comments. ECF 76-1 at 2-3. This Court then adopted the proposed decrees as Final Judgments against Wayne-Sanderson on June 5, 2023, and against George's on August 22, 2023. ECF 59; ECF 77. In both Final Judgments, the prohibitions on communicating competitively sensitive compensation data with Agri Stats remained unchanged from the language proposed in July 2022 and May 2023.

After learning that Defendants were systematically flouting the decrees by exchanging competitively sensitive compensation data with Agri Stats, the United States moved to enforce the Final Judgment against Wayne-Sanderson on January 18, 2025. ECF 86. Agri Stats then moved to intervene on January 30, 2025. ECF 101. The United States filed a motion to enforce the Final Judgment against George's on February 5, 2025. ECF 108. Agri States moved again to intervene on February 17, 2025. ECF 113.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure provides two avenues for intervention: intervention as of right and permissive intervention. Under Rule 24(a):

> [a]pplicants to intervene as of right must meet all four of the following requirements: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

*Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999).

If the applicant cannot demonstrate entitlement to intervention as of right, the court may still permit intervention under Rule 24(b), "although in that case the court must consider 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(3)).

In either case—as of right or permissive intervention—a party must seek intervention "[o]n timely motion." Fed. R. Civ. P. 24(a), (b). If it is untimely, intervention must be denied." *NAACP v. New York*, 413 U.S. 345, 365 (1973).

## ARGUMENT

### I.    Agri Stats Has No Right to Intervene

Agri Stats satisfies none of the requirements for intervention as of right. Its motions to intervene—filed more than two-and-a-half years after the filing of this case and well over a year after entry of the Final Judgments—are plainly untimely. That alone dooms them. *See, e.g.*, Fed. R. Civ. P. 24(a)-(b); *NAACP*, 413 U.S. at 365. Agri Stats cannot satisfy the other elements either: it lacks a cognizable interest in this decree enforcement proceeding, its interests are adequately (in fact, zealously) represented by Defendants, and its broader business interest is better addressed in the pending litigation in the District of Minnesota litigation in which it is a party.[2]

---

[2] Complaint, *United States v. Agri Stats, Inc.*, No. 23-cv-3009, ECF 1 (D. Minn. Sept. 28, 2023) (alleging that "Agri Stats has recruited and enabled all major U.S. chicken, pork, and turkey processors to exchange competitively sensitive information through its exclusive subscription and consulting business," in violation of Section 1 of the Sherman Act).

**A.      Agri Stats' Motions Are Not Timely Because They Were Filed Almost 20 Months After Entry of the First Final Judgment**

"As timeliness is a 'cardinal consideration' of whether to permit intervention, [courts] first consider the timeliness of [a] motion to intervene." *Houston Gen. Ins.*, 193 F.3d at 839. To assess timeliness, district courts are "obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). All three of these factors weigh against Agri Stats' intervention here.

1.  *Agri Stats Seeks to Intervene at a Very Late Stage of These Proceedings*

First, Agri Stats seeks to intervene at a very late stage. The United States proposed Final Judgments in 2022 and held public comment periods for these proposed Final Judgments in 2022 and 2023. This Court entered both Final Judgments in 2023. Agri Stats has known of the potential effects of the Final Judgments on its relationship with Defendants since the inception of this action in July 2022.

Intervention at this late stage would be extraordinary. "Although entry of final judgment is not an absolute bar to filing a motion to intervene, . . . '[t]here is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant.'" *Houston Gen. Ins.*, 193 F.3d at 840 (cleaned up). For example, in *Houston General Insurance*, the Fourth Circuit held that a motion to intervene filed "more than 60 days after the entry of final judgment" was untimely. *Id*. And in *Hispanic Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*, No. 18-cv-3821-TDC, 2022 WL 980176, at *1 (D. Md. Mar. 31, 2022), which Agri Stats cites, *see* ECF 101-1 at 2-3, the court denied as untimely a motion to intervene filed one month after the court had dismissed the case pursuant to a settlement, 2022 WL 980176, at *2, *6. Other courts have reached similar conclusions. *See, e.g., Reaching Hearts Int'l,*

*Inc. v. Prince George's Cnty.*, No. 05-cv-1688-RWT, 2011 WL 4459095, at *3 (D. Md. Sept. 23, 2011) (denying as untimely a motion to intervene filed during proceedings to enforce a final judgment); *Haw., Dep't of Hum. Servs. v. U.S. Dep't of Educ., Rehab. Servs. Admin.*, No. 08-cv-0044, 2009 WL 10677746, at *3 (D. Haw. Dec. 23, 2009) (prospective intervenor's motion was "extremely untimely" where there was "no longer an active case into which [the prospective intervenor] may intervene," and the "only remaining matter now before this Court in the original action is Plaintiff's motion to enforce the judgment"); *Thee Aguila, Inc. v. Penn Star Ins. Co.*, No. 19-cv-1621, 2021 WL 5748901, at *2 (C.D. Cal. Nov. 1, 2021) (denying prospective intervenor's motion as untimely where she sought to intervene only after a party filed a motion to enforce its money judgment); *Nat'l R.R. Passenger Corp. v. Commonwealth of Pa. Pub. Util. Comm'n*, No. 86-cv-5357, 1991 WL 993, at *2 (E.D. Pa. Jan. 4, 1991) ("The proper time for intervention was before this court issued its injunctive order, not now, when the only issue at hand is an order to enforce the already ordered injunction."). The same result is appropriate here.

Motions to intervene filed much sooner than Agri Stats' motion are consistently denied as untimely, especially where non-parties sit on their rights, as Agri Stats has here. For instance, in *Scardelletti v. Debarr*, the Fourth Circuit affirmed the denial of a motion to intervene as untimely because it was filed after preliminary approval of a class settlement and the would-be intervenor "was aware of his interest in the litigation from the outset of the case." 265 F.3d 195, 202-03 (4th Cir. 2001), *rev'd on other grounds sub nom. Devlin v. Scardelletti*, 536 U.S. 1 (2002). Similarly, in *Gould v. Alleco, Inc.*, the Fourth Circuit affirmed the denial of an intervention motion as untimely because it was filed "[t]hree and one-half months" after a settlement proposal was presented to the court, which was "outside even the most indulgent standard of timeliness." 883 F.2d 281, 286 (4th Cir. 1989). In *Alt*, the Fourth Circuit affirmed the denial of a motion to intervene

as untimely because it was filed during "summary judgment briefing and related proceedings," which was considered "a relatively advanced stage" of litigation. 758 F.3d at 591; *see also In re Sanctuary Belize Litig.*, No. 18-cv-3309-PJM, 2022 WL 2528428, at *6 (D. Md. July 7, 2022) (denying motion to intervene as untimely and collecting cases), *aff'd sub nom. FTC v. Lin*, 66 F.4th 164 (4th Cir. 2023).

Agri Stats cites no example of a court allowing intervention after entry of final judgment, as it seeks here. Instead, Agri Stats cites *McClenny Moseley & Assocs., P.L.L.C.*, No. 23-30670, 2024 WL 2874371, at *4 (5th Cir. June 7, 2024), which did not involve intervention after a final judgment and presented entirely different circumstances than these. ECF 101-1 at 3; ECF 113-1 at 3. *McClenny* was an "unusual case" in which a law firm "filed several hundred lawsuits within a short timeframe," and the district court entered a *sua sponte* disciplinary order that barred the law firm and "related parties" from any of the potential proceeds of the case. *Id.* at *1. The Fifth Circuit held that the *sua sponte* order had violated the law firm's and the related parties' due process rights, *id.* at *2, and that a motion to intervene filed 13 days after that order was timely, *id.* at *4. *McClenny* has no bearing on how this Court should address Agri Stats' motions here, where the issue is Defendants' compliance with decrees entered in 2023.

    2.  ***Agri Stats' Delay Would Prejudice the United States and the Poultry Processing Workers That the Final Judgments Protect***

Second, Agri Stats' late entry into the case would delay the proceedings and prejudice the United States by forcing it to respond to cumulative, duplicative, and immaterial arguments. *Alt*, 758 F.3d at 591 (finding prejudice from delayed proceedings and the "extra effort" needed to respond to filings from a new party); *Reaching Hearts Int'l*, 2011 WL 4459095, at *3 (denying motion where intervention "would unnecessarily complicate and prolong the proceedings" and thereby "cause [plaintiff] prejudice"). The subsequent delay will, in turn, prejudice poultry

workers, who should be protected by the consent decrees, because it will deprive them of the benefits of prompt decree enforcement. And allowing Agri Stats to intervene would open the door to unnecessary and duplicative participation by other third parties, such as other consultants or companies that do business with them. *Cf. United States et al. v. Google*, No. 20-cv-3010, 2025 WL 372072, at *9 (D.D.C. Jan. 27, 2025) ("Finally, the court cannot turn a blind eye to the potential consequences of granting Apple's motion. If Apple is entitled to intervene, there is no apparent reason why other counterparties to Google's search distribution agreements could be denied a similar opportunity.").

Agri Stats' intervention would not offer any unique insight that would justify the delay it would cause. Nonetheless, to the extent that Agri Stats' arguments are useful to the Court, the Court can take Agri Stats' oppositions (ECF 101-2; ECF 113-2) under advisement as *amicus curiae* filings, or grant leave for additional filings. *See, e.g.*, *Stuart*, 706 F.3d at 355 (explaining that, while intervention was not warranted because proposed intervenors would be adequately represented, they "retain[ed] the ability to present their views . . . by seeking leave to file amicus briefs"); *Google*, 2025 WL 372072, at *1 (denying motion to intervene but allowing non-party "to participate as *amicus curiae*").

3. ***Agri Stats Offers No Valid Excuse for Its Delay***

Third, Agri Stats presents no valid excuse for its tardiness. It contends that it learned only recently—without specifying when—that the United States "seek[s] an order that Wayne-Sanderson *cease doing business* with Agri Stats." ECF 101-1 at 3 (emphasis added). This is a red herring. The United States seeks only a temporary "pause [on Defendants'] information exchanges with Agri Stats." ECF 86-1 at 2 (Wayne-Sanderson); *see also* ECF 109 at 1 (George's) (asking the Court to "*temporarily* halt George's data exchanges with Agri Stats until the Monitor

can confirm that any future exchanges will no longer violate the decree" (emphasis added)); *id.* at 15. This request for a temporary "pause" or "halt" owes entirely to Defendants' failure to comply with the decrees and need last only until Defendants come into compliance. Defendants should have voluntarily ended violative data exchanges upon entry of the Final Judgments (or earlier) but chose not to. *See, e.g.*, ECF 104 at 8 (explaining "Wayne-Sanderson's conduct toward other consultants" and that Wayne-Sanderson had terminated its relationship with multiple other consultants in order to comply with the Final Judgment). In any case, a "pause" on data exchange does not require a suspension of *payments* to Agri Stats, which is a matter between Agri Stats and Defendants, and more importantly, not a factor in determining if the consent decrees have been violated.

Accordingly, the relief the United States seeks in this enforcement proceeding is part and parcel of the issues that have been before this Court and known to Agri Stats since 2022—the impermissible exchange of compensation data between competitors via consultants. Agri Stats has not presented either factual or legal arguments that would excuse its untimely intervention; this third and final factor weighs against intervention.

### B.    Agri Stats Lacks a Cognizable Interest in This Enforcement Action

Agri Stats does not have a cognizable "interest in the subject matter of" this action to enforce the consent decree obligations of its customers. *Houston Gen. Ins.*, 193 F.3d at 839. It claims the need to earn revenue to defend itself in an independent litigation, but these purported commercial and commercial speech interests are generalized, unsubstantiated, and do not justify intervention. ECF 101-1 at 4; *see also* ECF 113-1 at 4.

First, Agri Stats' claimed financial stake in the outcome of this enforcement proceeding is too speculative and abstract to warrant intervention. *See, e.g.*, *Gould*, 883 F.2d at 285 (holding that

a company's bondholders, which stood to have their assets "deplete[d]" based on a securities lawsuit against the company, lacked an interest "relating to the property or transaction which is the subject of the action" required under Rule 24). Agri Stats has offered no specific support for why it would "stand to gain or lose by the direct legal operation of" the Court ordering two customers to cease violating consent decrees, *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991), much less why that would be a relevant consideration for this Court. Such an interest therefore does not satisfy Rule 24(a)(2). *See Gould*, 883 F.2d at 285; *Sanctuary Belize*, 2022 WL 2528428, at *8-9 ("potential creditors" of defendants whose assets were placed in receivership "are unrelated to the subject of" the enforcement action (citing *Gould*)); *Tillman Infrastructure LLC v. Bd. of Supervisors of Culpeper Cnty., Va.*, 2022 WL 1540344, at *1 (W.D. Va. May 16, 2022) ("[T]he fact that [the proposed intervenor] might lose a contract depending on the outcome of [the] action here does not mean that [the intervenor] has an interest relating to the property or transaction in question.").

Second, Agri Stats has no legally protected interest in doing business or earning revenue in violation of binding Final Judgments. *See, e.g.*, *Nat'l Soc. of Pro. Eng'rs v. United States*, 435 U.S. 679, 697 (1978) ("While the resulting order may curtail the exercise of liberties that the Society might otherwise enjoy, that is a necessary and, in cases such as this, unavoidable consequence of the violation."). "[C]ourts are authorized, indeed required, to decree relief effective to redress the violations, whatever the adverse effect of such a decree on private interests." *United States et al. v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961). So even if an indeterminate interest in earning revenue from two customers were sufficient to justify intervention in another context, that interest ends where the Final Judgments begin. Moreover, insofar as Agri Stats desired clarification of whether particular aspects of its business relationship

11

with Defendants were permitted by the Final Judgments, it could have participated in the notice-and-comment process or sought intervention years ago. *See supra* at 4.

Third, Agri Stats' revenues are not relevant to the Court's evaluation of whether the consent decree is being violated, particularly without any specific support to suggest the contrary. The United States has not sought any specific relief related to payments by Defendants to Agri Stats. Instead, the relief sought relates only to Defendants' consent decree obligations and ensuring that Defendants do not continue to violate those obligations—either in the short or long term. Nor is it relevant how Agri Stats would use the revenue it earns from Defendants, *see* ECF 101-1 at 6, ECF 113-1 at 6, as Rule 24(a)(2) explicitly requires an "interest relating to . . . th[is] action." Agri Stats has cited no precedent to the contrary. To the extent Agri Stats claims an interest in defending the legality of its broader business, that too is not the subject of this action.

Finally, Agri Stats' commercial speech interests are too indirect to warrant intervention. *See* ECF 101-1 at 4; ECF 113-1 at 4. The First Amendment does not "make it . . . impossible ever to enforce laws against agreements in restraint of trade." *Nat'l Soc. of Pro. Eng'rs*, 435 U.S. at 697 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). And consent decrees and other settlements may affect parties' speech without contravening the First Amendment. *See, e.g.*, *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975). Any effect on Agri Stats flows from Defendants' commitment to halt sharing competitively sensitive compensation information and their subsequent breach; again, the United States does not seek to enforce the consent decree against Agri Stats. In alluding to supposed commercial speech interests, Agri Stats stands in no different a position than other third parties—including the other chicken processors—that may encounter collateral consequences from Defendants' consent. Agri Stats cannot use intervention to raise defenses that Defendants do not have.

12

**C.      Denying the Motion Will Not Impair Agri Stats' Ability to Protect Its Interests**

Denying Agri Stats intervention and enforcing the Final Judgments will not "impair or impede [its] ability to protect" its claimed interest. *Houston Gen. Ins.*, 193 F.3d at 839. Agri Stats arguments to the contrary are unavailing.[3]

First, Agri Stats claims that the litigation would deprive it "of a business relationship and related subscription fees from a prominent customer." ECF 101-1 at 5; ECF 113-1 at 5. As discussed above, however, a temporary pause need not end Agri Stats' "business relationship" with Defendants at all. In this proceeding, the United States does not seek an end to Defendants' subscriptions to Agri Stats or impose suspension of the fees they pay Agri Stats.

Second, Agri Stats claims that the litigation would deprive it of its "First Amendment right to share valuable information with" Defendants. *Id.* As discussed above, Defendants lack a First Amendment right to continue information exchanges that violate a valid consent decree. Agri Stats cites no authority suggesting that its First Amendment rights are implicated if the Court must issue "further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment" or "to enforce compliance," as provided in the Final Judgments. ECF 59, § XII; ECF 77, § XII.

**D.      Defendants Adequately Represent Agri Stats' Interests**

Where, as here, a "party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). To rebut this presumption, the prospective intervenor "must demonstrate [1] adversity of interest, [2] collusion, or [3]

---

[3] If the Court permits Agri Stats to intervene, the United States will file a full response as to why Agri Stats' merits arguments are incorrect, as permitted by the Court's order granting the parties' joint motion for a briefing schedule. ECF 112 at 2.

nonfeasance." *Id.* Interests that are "related but not identical" are insufficient to show "that they are adverse." *Oak Plaza, LLC v. Buckingham*, 2024 WL 3729108, at \*4 (D. Md. Aug. 8, 2024).

Agri Stats concedes that it "seeks the same outcome as Wayne-Sanderson" and "as George's": denial of the United States' Motions to Enforce. ECF 101-1 at 5; ECF 113-1 at 6; *see also* ECF 101-2 at 29 (Agri Stats' proposed Opp. to the United States' Mot. to Enforce); ECF 105 at 29 (Wayne-Sanderson's Opp. to the United States' Mot. to Enforce). This makes sense given that Agri Stats and Defendants defend their ongoing information exchange exactly as it is, even though, as stated earlier, the United States does not take issue with Defendants continuing to contract with Agri Stats while also coming into compliance with the Final Judgment. *Compare* ECF 101-1 at 5; ECF 113-1 at 6, *with* ECF 115 at 10-11 (George's Opp. to the United States' Mot. to Enforce); ECF 105 at 7-8 (Wayne-Sanderson's Opp. to the United States' Mot. to Enforce). Both Wayne-Sanderson and George's have underscored this shared interest with Agri Stats by stressing the importance they place on their "participation in Agri Stats." ECF 105 at 28 (opposing remedy "designed to destroy Agri Stats' relationship with Wayne-Sanderson—one of Agri Stats' largest customers"); *id.* at 14 (describing its interest in sharing information with Agri Stats); *see also* ECF 115 at 7 (describing Agri Stats reporting as "critical" to George's). Because Agri Stats and Defendants all seek the "same ultimate objective," Defendants are presumed to adequately represent Agri Stats' interests. *Westinghouse*, 542 F.2d at 216; *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 2024 WL 4349904, at \*3 (E.D.N.C. Sept. 30, 2024).

Agri Stats cannot overcome this presumption because it does not claim "collusion" or "nonfeasance," and it has not shown "adversity of interest." *Westinghouse*, 542 F.2d at 216. The record shows quite the opposite: Defendants are collaborating with Agri Stats in this matter. For example, Agri Stats supplied a declaration to support George's position, ECF 108, Ex. 4 at 14

(George's), thus "reveal[ing] that [they] are actively working and cooperating with one another," *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 470 (M.D.N.C. 2003) (finding that the defendant and proposed intervenor's cooperation with each other supported that the defendant would adequately represent proposed intervenor's interests). Both Defendants have also advocated for the claimed benefits of Agri Stats' reports in their briefing. *See* ECF 105 at 7-8, 22 (Wayne-Sanderson's Opp. to the United States' Mot. to Enforce); ECF 115 at 24-25 (George's Opp. to the United States' Mot. to Enforce).

The relief sought by the United States in its motions to enforce is limited to these two Defendants; the United States is not seeking nor would this Court be expected to enter sweeping changes to Agri Stats reports or "deprive Agri Stats . . . of its day in court in Minnesota" on issues that "Wayne-Sanderson cannot defend." ECF 101-1 at 6; *see also* ECF 113-1 at 6. Agri Stats is not bound by the Final Judgments in this case, and it will retain the ability to defend its broader business in the Minnesota litigation. The only remedies sought by the United States are to bind the Defendants—not Agri Stats—to their own obligations. And, again, insofar as the Final Judgments' restrictions on Defendants' information sharing risks collateral consequences to Agri Stats, Agri Stats has known about those risks for years. *See supra* at 4.

At bottom, there is no "adversity of interest," *Westinghouse*, 542 F.2d at 216, because Defendants' and Agri Stats' interests are aligned. Defendants' positions make clear that they will continue to defend Agri Stats' business interests, which they perceive to be aligned with their own. Any concern that Defendants might change their position is speculative. *Id.* (rejecting as "unfounded" proposed intervenor's argument that plaintiff, "during settlement negotiations, might compromise the case in a manner which would be adverse" to proposed intervenor).

Agri Stats' citation to *Berger* is likewise misplaced. ECF 101-1 at 5 (citing *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197-99 (2022)). *Berger* involved the narrow circumstance in which "a duly authorized state agent seeks to intervene to defend a state law." *Id.* at 197. In that context, "a presumption of adequate representation is inappropriate," but the Court expressly limited its holding and did not disturb the presumption applicable here. *Id.* Agri Stats is not a duly authorized state agent seeking to defend a state law, so *Berger* is inapplicable.

## II.    Agri Stats Is Not Entitled to Permissive Intervention

Agri Stats' motions to intervene are untimely for the reasons set forth above, *see* Part I.A, and permissive intervention should be denied on that basis alone. Fed. R. Civ. P. 24(b)(1) (permissive intervention permitted only "[o]n timely motion"); *Alt*, 758 F.3d at 591 ("A party seeking to intervene under either Federal Rule of Civil Procedure 24(a) or 24(b) may do so only upon the filing of a 'timely motion.'").

If the Court were to find that the motions are timely, the circumstances here would still militate against permissive intervention. Rule 24(b)(1) provides that a district court "may permit anyone to intervene who," among other things, "has a claim or defense that shares with the main action a common question of law or fact." "Critically, the rule also states that '[i]n exercising its discretion' to permit intervention, a district court 'must consider whether the intervention will unduly delay . . . the adjudication." *Stuart*, 706 F.3d at 355 (quoting Fed. R. Civ. P. 24(b)(3)); *see also* Fed. R. Civ. P. 24(b)(1). Permissive intervention is inappropriate "where the applicant raises claims collateral or extrinsic to the questions presented in the original proceedings, even though the petition presents a common question of law or fact." *Subaqueous Expl. & Archeology Ltd. v. Unidentified, Wrecked and Abandoned Vessel*, 577 F. Supp. 597, 602-03 (D. Md. 1983) (listing cases).

The Court should not permit intervention for the reasons described in Part I. Moreover, Agri Stats has no "claim or defense that shares with the main action a common question of law or fact," and any common questions are "collateral or extrinsic" to the enforcement of the Final Judgments here. The legal and factual issues Agri Stats seeks to introduce go far beyond interpretation of the Final Judgments and whether Wayne-Sanderson and George's are complying with them. For example, Agri Stats seeks to litigate the competitive merits of Agri Stats' reports, which are not at issue here. *See, e.g.*, ECF 101-2 at 1. It also seeks to inject other extraneous matters, such as its claim that the United States "*refused* to talk to Agri Stats about" proposed modifications to its reports that were posed in an attempt to settle a separate litigation matter with private plaintiffs that are not parties to this matter. *Id.* (emphasis in original).

These examples illustrate that Agri Stats is attempting to shoehorn other litigation and other disputes into this matter, introducing a sideshow that would only distract from resolving the sole matter before the Court: whether Wayne-Sanderson and George's are complying with this Court's Final Judgments. Such a sideshow would waste the Court's time and further prejudice the United States. Courts in this District have declined to permit intervention in such circumstances. *See, e.g.*, *Reaching Hearts Int'l*, 2011 WL 4459095, at *3 ("Allowing intervention at this point in the litigation would unnecessarily complicate and prolong the proceedings."); *Am. Coll. of Obstetricians & Gynecologists v. U.S. F.D.A.*, No. 20-cv-1320-TDC, 467 F. Supp. 3d 282, 292 (D. Md. 2020) (denying permissive intervention that "would result in the injection of issues" unrelated to the existing litigation); *Boothe v. Northstar Realty Fin. Corp., Inc.*, 16-cv-3742-JKB, 2019 WL 587419, at *4 (D. Md. Feb. 13, 2019) (holding that "substantial additional litigation prejudices existing parties").

Agri Stats also claims that it should be permitted to intervene because the United States' "motion seeks substantial modification of a consent decree that was subject to the Tunney Act." ECF 101-1 at 8; ECF 113-1 at 8. First, the Tunney Act "does not confer any *right* to intervene, conditional or otherwise." *United States et al. v. G. Heileman Brewing Co.*, 563 F. Supp. 642, 648 (D. Del. 1983) (emphasis in original). Second, the United States does not seek any *modification* of the Final Judgments. Instead, the United States seeks merely to *enforce* the existing terms of the Final Judgments and bring Wayne-Sanderson and George's into compliance, as described above.

Agri Stats cites *Feller v. Brock* for the proposition that "liberal intervention is desirable." ECF 101-1 at 7 (quoting *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)). But a general desire for liberal intervention does not supplant the specific requirements for intervention, which Agri Stats does not satisfy. The intervenors in *Feller*, unlike Agri Stats here, were not adequately represented by the existing parties because their interests were adverse to the parties in the litigation. *Feller*, 802 F.2d at 730.

Agri Stats' reliance on *Natural Resources Defense Council, Inc. v. Coit*, No. 21-cv-1827-LKG, 2021 WL 9440424 (D. Md. Nov. 23, 2021) is also misplaced. ECF 101-1 at 7. In that case, the proposed intervenor filed its motion within three months of the filing of the complaint and raised defenses that "involve[d] the same legal issues." *Coit*, 2021 WL 9440424, at *1-2. As a result, the court found that intervention "would not prejudice the other parties or delay th[e] litigation." *Id.* at *2. In contrast, Agri Stats aims to intervene *two-and-a-half years* after the United States filed its Complaint and over a year after the Court entered the Final Judgment between the United States and George's. Agri Stats also seeks to introduce numerous legal and factual issues irrelevant to the present enforcement motions. Finally, denial of the motions would not impede Agri Stats' ability to protect its limited interests for the reasons discussed above.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Agri Stats' motions to intervene.

Dated: March 3, 2025

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

KATE M. RIGGS
Acting Chief
Civil Conduct Task Force

/s/ Eun Ha Kim
EUN HA KIM
 (special admission as government attorney)
Senior Trial Counsel

/s/ Jessica J. Taticchi
JESSICA J. TATICCHI
(special admission as government attorney)
Trial Attorney, Civil Conduct Task Force

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 805-8465
Eun-Ha.Kim@usdoj.gov
Jessica.Taticchi@usdoj.gov

20

<u>**CERTIFICATE OF SERVICE**</u>

I, Eun-Ha Kim, hereby certify that on March 3, 2025, I caused true and correct copies of the United States' Opposition to Agri Stats' Motions to Intervene and related materials to be served via the Court's CM/ECF system and email to Agri Stats' counsel.

FOR PLAINTIFF
UNITED STATES OF AMERICA

/s/ Eun-Ha Kim
EUN-HA KIM
*(special admission as government attorney)*
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 805-8465
Eun-Ha.Kim@usdoj.gov