**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       *Plaintiff*,<br><br>   v.<br><br>CARGILL MEAT SOLUTIONS<br>CORPORATION, *et al.*,<br><br>                       *Defendants*. | Civil Action No.: 1:22-cv-01821-SAG |

**REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO ENFORCE**
**THE FINAL JUDGMENT AGAINST GEORGE'S**

# TABLE OF CONTENTS

I.    George's Sharing of Information with Agri Stats Violates the Final Judgment ........... 1

II.    George's Shares Competitively Sensitive Compensation Information "Indirectly" with Its Competitors Using Agri Stats ........................................................................... 3

III.    Payroll Data George's Sends to Agri Stats Is Both "Competitively Sensitive Information" and "Compensation" Information ........................................... 5

IV.    George's Separately Is Violating the Decree by Accepting Reports from Agri Stats Containing Its Competitors' Compensation Data ........................................ 7

V.    An Order to Pause Sharing Information with Agri Stats and Extend the Decree Is Necessary to Address George's Violations .............................................. 7

VI.    Conclusion ........................................................................................................... 10

Today, George's exchanges competitively sensitive compensation information with Agri Stats, and with George's competitors through Agri Stats, in violation of this Court's Final Judgment against George's. Even though the consent decree expressly refers to Agri Stats, George's argues that the Final Judgment never required George's to make any changes to its relationship with Agri Stats. George's position is inconsistent with the plain language of the Final Judgment. As such, the Court should enforce the Final Judgment against George's.

## I.    George's Sharing of Information with Agri Stats Violates the Final Judgment

George's does not dispute that it provides labor cost data to Agri Stats for use in its reports. *See* ECF 115 at 8 (George's Opp.). This conduct falls plainly within the decree's prohibition on "Communicating Competitively Sensitive Information about Compensation for Poultry Processing Workers to any Consulting Firm that produces reports regarding Compensation for Poultry Processing Workers that are shared with other Poultry Processors." George's FJ § IV.A.4.

George's main defense is that this obligation follows the word "including," and, thus, there is no "stand-alone" prohibition on sharing sensitive compensation information with Consulting Firms. ECF 115 at 15. But, as the United States explained already, the antecedent "including" does not vitiate what follows, and "including" clauses often broaden or clarify a provision's scope. ECF 108-1 at 9 (citing *Adams v. Dole*, 927 F.2d 771, 776-77 (4th Cir. 1991)); *see also, e.g.*, *Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993); *Am. Sur. Co. of New York v. Marotta*, 287 U.S. 513, 517 (1933) (observing that "[i]n definitive provisions of statutes and other writings, 'include' is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation or enumeration"); *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) ("[T]he word 'includes' is usually a term of enlargement, and not of

1

limitation." (quoting 2A Singer § 47:7)); *see also* ECF 104 at 5 (United States' Opp. to Wayne-Sanderson's Mot. for Clarification).

The surrounding text confirms that George's misreads the provision. The "including" clause adds that a processor "indirectly . . . Communicate[s]" competitively sensitive information by "[1] Communicating Competitively Sensitive Information about Compensation for Poultry Processing Workers [2] to any Consulting Firm that produces reports regarding Compensation for Poultry Processing Workers that are shared with other Poultry Processors." George's FJ § IV.A.4. By using the phrase "any Consulting Firm *that* produces reports," the provision prohibits the transfer of competitively sensitive information to Agri Stats, whose business model includes disseminating data among competing processors through industry reports, without forcing the United States to trace that data across subsequent reports received by processors. That makes sense because Agri Stats itself is not a party to the decree, and Agri Stats discloses competitively sensitive data to processors through consulting services outside of its reports.

By contrast, George's interpretation contravenes the decree's text and renders the provision surplusage. The provision prohibits George's from sending data to "any Consulting Firm *that* produces reports"—not, as George's interpretation suggests, to "any Consulting Firm that [the United States proves uses the data to] produce[] reports" for other processors. *See, e.g.*, *Calderon v. Atlas S.S. Co.*, 170 U.S. 272, 279 (1898) ("If it had been intended to so limit the respondent's liability, it would have been easy to say so . . . ."). Indeed, George's admits that under its interpretation this lengthy provision prohibiting exchanging data with Agri Stats merely "reinforces the principle" that information cannot be shared indirectly without adding any additional meaning. ECF 115 at 15. Courts should avoid rendering such a lengthy clause surplusage. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (noting that "the canon

2

against surplusage applies with special force" when it would render large amounts of text redundant). Thus, by admitting to sending labor data to a company whose business model is to use that data to generate reports, George's has breached the plain language of the Final Judgment.[1]

### II. George's Shares Competitively Sensitive Compensation Information "Indirectly" with Its Competitors Using Agri Stats

Even if the provision were read to require the United States to prove Agri Stats' subsequent use of the data in reports, George's has still violated the provision. As Agri Stats touts on its own website, its "clients include fully integrated U.S. broiler producers who participate in monthly data analytics and benchmarking."[2] Using those data submissions, Agri Stats creates "customized reports and graphics to identify, for each participant, how *every level* of their operation performed during a given period, and *how they compared to similar organizations in their respective industries*." *Id.* (emphasis added). Agri Stats reports offer competitors the ability to see, for example, their own labor costs in a specific department, side-by-side with competitors' labor costs in that same department.

In misleadingly claiming that "the data George's sends to Agri Stats is not being shared with other poultry processors," ECF 115 at 18, George's appears to mean that Agri Stats does not literally forward George's raw data submission to George's competitors. *See also id.* at 1. Instead, George's data is used by Agri Stats to calculate plant-level metrics that capture George's costs, including labor costs at individual George's plants, and Agri Stats shares *those* data points

---

[1] While George's has clearly violated the decree even under its interpretation of "including," the United States respectfully asks the Court to address George's interpretation of the provision. Requiring the Monitors to uncover precisely what Agri Stats does with George's sensitive compensation data would increase the cost and burden of ensuring compliance with the decree.

[2] Services, Agri Stats, https://www.agristats.com/services/ (last visited Mar. 5, 2025).

with George's competitors. *See, e.g.*, ECF 108-1 at 13-14, Fig. 5 (United States' Mem. in Supp. of Mot. to Enforce) (showing an example of an Agri Stats report George's received that includes plant-level, department-specific labor costs circulated among competing poultry processors). The Final Judgment does not limit "indirectly" sharing information to only the sending of the exact data set, in the same form, as George's transmitted to Agri Stats. And for good reason. Such an exception would eviscerate the decree, allowing Agri Stats to convey George's sensitive compensation data to competitors merely by performing some calculations on that data first. It also would ignore the reality that by facilitating an apples-to-apples comparison of compensation data, Agri Stats' calculations may make it *easier* for poultry processors to set their own compensation with full visibility into competitors' "labor costs."

Figure 5 in the United States' opening brief shows a section of an Agri Stats report received by George's. ECF 108-1 at 13. It demonstrates that poultry processors send to Agri Stats sufficient Compensation information to allow Agri Stats to calculate competitors' labor costs at individual plants. Agri Stats also receives sufficient Compensation data from competitors in the poultry industry to allow Agri Stats to calculate a statistic that facilitates the apples-to-apples comparison of each competitors' wage rates including benefits. *See id.* (column c.1).[3] Agri Stats, therefore, "produces reports regarding Compensation for Poultry Processing Workers that are shared with other Poultry Processors;" and George's receives Compensation data from its competitors via these Agri Stats reports. George's FJ § IV.A.4.

---

[3] While column c.1 has been removed from the exemplar report in Figure 5, the United States demonstrated in its opening brief that the omitted data can be derived from other data points on the same page. ECF 108-1 at 14-15. Regardless, the existence of the column indicates that Agri Stats receives sufficient Compensation information from poultry processors to calculate the data point in the first instance.

This repackaging of George's Compensation data by Agri Stats violates the decree's provision prohibiting George's from "indirectly" sharing its sensitive compensation information with competitors. Nowhere does the Final Judgment state that if a consultant performs calculations on the data before sharing it, that defeats any argument that the data was "indirectly" shared. Instead, by prohibiting the sharing of information with consultants—specifically Agri Stats, which takes the raw information and repackages it for distribution—the Final Judgment expressly contemplates that sharing Compensation data violates the decree even where the data has been reformulated.

### III. Payroll Data George's Sends to Agri Stats Is Both "Competitively Sensitive Information" and "Compensation" Information

The information George's shares with Agri Stats also satisfies the definition of "Competitively Sensitive Information about Compensation" in the Final Judgment.

George's does not dispute that it "sends to Agri Stats the sum of all of the salary pay that George's paid in a specified period to all salaried employees in a department." ECF 115 at 18; *see also* ECF 108-1 at 6, Fig. 1 (showing that George's reports to Agri Stats the total number of hours worked in specific departments, the total wage amount paid for the hours worked, and the specific types of pay rendered (e.g., overtime, paid time off)). Despite admitting to regularly sending the compensation data shown in Figure 1 to Agri Stats, George's contends that Figure 1 somehow satisfies neither the definition of "Compensation" nor "Competitively Sensitive Information." Both arguments seek to add to definitions words that are not there, violating the maxim that when a legal document "includes an explicit definition, [a court] must follow that definition." *See, e.g.*, *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

In the definition of "Compensation," the consent decree squarely covers George's sending of data about "payment for work, including salaried pay, hourly pay, regular or ad hoc bonuses, over-time pay, and benefits, including healthcare coverage, vacation or personal leave, sick leave, and life insurance or disability insurance policies." George's FJ § II.E. Far from meaningfully "aggregate[d]," *e.g.*, ECF 115 at 1, 7, 10, 15-17, George's provides data about the specific number of hours worked and earnings paid for each department. ECF 115 at 19. These types of exchanges figure throughout the Complaint. *E.g.*, ECF 48 ¶¶ 5(e), 7, 27, 135. More importantly, the definition of "Compensation" does not depend on what "HR professionals" did;[4] it covers "all forms of work," regardless of the level of aggregation. The consent decree's definition controls. *Digital Realty Tr., Inc.*, 583 U.S. at 160.

Turning to "Competitively Sensitive Information," the Final Judgment defines "Competitively Sensitive Information" to include "amounts and types of Compensation" as well as "information that is relevant to, or likely to have an impact on, . . . cost (*including Compensation*)." George's FJ § II.F (emphasis added). This definition does not, as George's contends, require an analysis to determine "whether 'the exchange' [of that information] 'could harm competition.'" ECF 115 at 20-21. To the contrary, such an analysis would defeat the point of the consent decree by requiring the United States to establish a violation of the antitrust laws to determine whether George's has violated the decree. Again, George's cannot read additional limitations into definitions.

---

[4] The Final Judgment applies to George's executives and HR professionals. Both executives and HR professionals make decisions on overall compensation, including wages, vacation, overtime, bonuses, and other benefits.

## IV. George's Separately Is Violating the Decree by Accepting Reports from Agri Stats Containing Its Competitors' Compensation Data

In addition to violating the decree by providing data to Agri Stats, George's is violating the decree by accepting reports with its competitors' data in return. This constitutes a separate violation of the decree. On this violation, George's offers nothing more than the same defense of providing competitively sensitive information to Agri Stats. For the reasons explained already as to that violation, the Court should find that George's is separately violating the decree by receiving its competitors' data.

## V. An Order to Pause Sharing Information with Agri Stats and Extend the Decree Is Necessary to Address George's Violations

A temporary pause of George's subscription to Agri Stats is necessary to ensure that George's starts complying with the decree. At present, if the Court finds a violation, George's has every incentive to prolong a remediation proceeding while continuing to exchange competitively sensitive labor data with Agri Stats. The ongoing harm from these continued violations of the decree cannot be undone: Agri Stats is not a party to the decree and refuses to destroy participants' "converted Confidential Information" once formulated into reports. *See* ECF 108-1, Ex. 3 at 56 (Agri Stats Confidentiality Policy). A pause will also prevent any sharing of sensitive compensation information *outside* of reports, such as through Agri Stats' customer portal.[5] Agri Stats rapidly disseminates this information not only through reports, but also through its website and other means. *See* ECF 115-3 at 4 ("Agri Stats' customer portal website

---

[5] The definition of "Communicate" includes providing or receiving information "*regardless of the means by which it is accomplished*, including orally or by written means of any kind, such as electronic communications, e-mails, facsimiles, telephone communications, voicemails, text messages, audio recordings, meetings, interviews, correspondence, exchange of written or recorded information, including surveys, or face-to-face meetings." George's FJ § II.D (emphasis added).

also includes 'scorecards' that can be viewed but not downloaded. The scorecards display for each George's facility a limited number of high-level metrics/statistics that can also be found within the more comprehensive Agri Stats reports available for downloading."). In such circumstances, the burden should be on George's, as the party in breach of its freely accepted obligations, to halt its conduct until it comes into compliance.

In opposing this remedy, George's raises a host of wrong or irrelevant assertions. The United States did not hide its cards until its motion to enforce the decree, as George's attests. *See* ECF 115 at 22. To the contrary, George's has impeded the Monitors' attempts to investigate the violations, for example, by objecting to producing Agri Stats' reports to the Monitors. ECF 108-1, Ex. 1 at 7-8. After learning of the scope of the violations, the United States and Monitors made multiple efforts to engage with George's on its conduct. ECF 108-1, Ex. 1 at 6-9 & Ex. 2. While belittling its violation as "two categories of information" that "are of little or no importance to George's," George's has refused to stop sharing its labor compensation data with Agri Stats or propose how to disentangle compensation data from non-compensation data. George's cannot seriously claim to have made such a proposal in *Jien*, ECF 115 at 23, where the private parties tried to foist a settlement on the United States that did not prohibit the sharing of "Competitively Sensitive Information about Compensation," as this decree does. At bottom, George's seems to complain that the United States seeks to enforce the "plain meaning of the consent decree," rather than entering protracted negotiations over which obligations George's will fulfill. *See* ECF 115 at 24 (disparaging the United States' position as "you made your bed now lie in it").

George's argues that a pause would create a "disparity" if "George's competitors continue to have access" to Agri Stats' information-sharing network but George's does not. *See* ECF 115 at 24, n.12 (emphasis omitted). But the United States brought this case (and a separate

case against Agri Stats) because chicken processors have been using information sharing to harm workers and consumers. The decree seeks to create a "level playing field" for *workers*, whom George's shortchanged for years, by sharing competitively sensitive compensation information with its competitors. *Id.* at 25.

Given George's systemic violations of the decrees, the United States is left to seek a temporary pause of its information exchange with Agri Stats while it and the Monitors attempt to do what George's has refused. The Court should immediately order, at minimum, that George's cease sending its payroll data to Agri Stats. George's could stop this violative conduct immediately and in advance of any additional analysis of Agri Stats reports. And as the United States has amply demonstrated, payroll information such as earnings for hours worked constitutes "Competitively Sensitive Information about Compensation for Poultry Processing Workers." The violations must stop.

For the same reasons, an extension of the Final Judgment is appropriate here. George's incorporates by reference Wayne-Sanderson's incorrect argument that such an extension would be "inappropriate." ECF 105 at 23. But the Final Judgment expressly contemplates an extension when a defendant "has violated this Final Judgment." George's FJ § XIII.C. Wayne-Sanderson and George's concede as much. ECF 105 at 23 (Wayne-Sanderson acknowledging that "[t]he Final Judgment envisions that modifying the Final Judgment to extend its terms may be appropriate when violations are found"). The Final Judgment does not require this Court to make a finding of "substantial" non-compliance before extending the term of the decree,[6] but even if it

---

[6] For example, *Duvall v. Hogan* does not hold that substantial non-compliance is *required* for an extension of a Final Judgment only that it "can qualify" as a basis for modification. No. ELH-94-2541, 2021 WL 2042295, at *14 (D. Md. May 21, 2021) ("failure of substantial compliance with the terms of a consent decree can qualify as a significant change in circumstances justifying

did, the outcome would be the same. Both George's and Wayne-Sanderson have refused to stop exchanging sensitive compensation information with a consulting firm identified *by name* in the Final Judgment. Such conduct flouts a core prohibition in the Final Judgment and easily qualifies as "substantial" non-compliance.

## VI. Conclusion

For the reasons articulated above and in the United States' Motion to Enforce the Final Judgment, ECF 108, the United States requests that the Court (a) order George's to cease sharing all information with Agri Stats until the Monitors and the United States, or this Court, can ensure compliance with the Final Judgment, (b) extend the term of the Final Judgment, and (c) order any additional relief as may be appropriate.

---

modification"). *Accord Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 284 (3d Cir. 2001) (listing substantial non-compliance as one basis for modification).

Dated: March 5, 2025

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

KATE M. RIGGS
Acting Chief, Civil Conduct Task Force

/s/ Jessica J. Taticchi
JESSICA J. TATICCHI
*(special admission as government attorney)*
Trial Attorney, Civil Conduct Task Force

/s/ Eun Ha Kim
EUN HA KIM
*(special admission as government attorney)*
Senior Trial Counsel

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 812-4723
Facsimile: (202) 307-5802
Jessica.Taticchi@usdoj.gov
Eun-Ha.Kim@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jessica J. Taticchi, hereby certify that on March 5, 2025, I caused a true and correct copy of the United States' Reply in Support of Its Motion to Enforce the Final Judgment Against George's to be served via the Court's CM/ECF system and, in addition, via email to George's counsel.

FOR PLAINTIFF
UNITED STATES OF AMERICA

/s/ Jessica J. Taticchi
Jessica J. Taticchi
*(special admission as government attorney)*
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 812-4723
Facsimile: (202) 307-5802
Email: Jessica.Taticchi@usdoj.gov