UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        *Plaintiff*,<br><br>   v.<br><br>CARGILL MEAT SOLUTIONS<br>CORPORATION, *et al.*,<br><br>                      *Defendants*. | Civil Action No.: 22-cv-1821 |

**WAYNE-SANDERSON'S REPLY IN SUPPORT OF
MOTION FOR CLARIFICATION OF THE MODIFIED FINAL JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.  NO COMPETITIVELY SENSITIVE INFORMATION ABOUT COMPENSATION IS BEING SENT TO OR RECEIVED FROM AGRI STATS. ....................................................... 2

    a.  Providing Agri Stats with Aggregated Cost Information Does Not Violate the Final Judgment. ............................................................................................................................. 2

    b.  Wayne-Sanderson's Receipt of Data from Agri Stats Is Not a Final Judgment Violation .. 5

II.  SECTION IV.A.4 PROHIBITS CERTAIN INFORMATION EXCHANGES WITH OTHER CHICKEN COMPANIES—NOT AGRI STATS. ............................................................. 6

III. THE EXTRINSIC EVIDENCE SUPPORTS WAYNE-SANDERSON'S INTERPRETATION. ..................................................................................................................... 10

IV. THE DOJ'S REQUESTED REMEDY IMPERMISSIBLY SEEKS TO BAN WAYNE-SANDERSON FROM SUBSCRIBING TO AGRI STATS. ......................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Dole*,
   927 F.2d 771 (4th Cir. 1991) ............................................................................................... 7, 8

*Ariz. State Bd. For Charter Schs. v. U.S. Dept. of Educ.*,
   464 F.3d 1003 (9th Cir. 2006) ............................................................................................. 7, 8

*Chickasaw Nation v. United States*,
   534 U.S. 84 (2001) .................................................................................................................. 8

*FTC v. Trudeau*,
   579 F.3d 754 (7th Cir. 2009) .................................................................................................. 14

*Goodman v. Resol. Tr. Corp.*,
   7 F.3d 1123 (4th Cir. 1993) ..................................................................................................... 8

*Jien v. Perdue Farms, Inc.*,
   No. 1:19-cv-2521, 2022 WL 2818950 (D. Md. July 19, 2022) ............................................. 11

*U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*,
   873 F.2d 731 (4th Cir. 1989) ................................................................................................... 7

*United States v. Bechtel Corp.*,
   648 F.2d 660 (9th Cir. 1981) ................................................................................................. 11

*United States v. Helton*,
   944 F.3d 198 (4th Cir. 2019) ................................................................................................... 7

*United States v. ITT Cont'l Baking Co.*,
   420 U.S. 223 (1975) ............................................................................................................... 11

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   2016 WL 1597119 (D. Md. Apr. 20, 2016) ........................................................................... 14

**PRELIMINARY STATEMENT**

The opposition confirms that Wayne-Sanderson has not violated the Final Judgment.[1] The DOJ does not dispute the substantial evidence Wayne-Sanderson advanced demonstrating that the Company does not exchange Competitively Sensitive Information about Compensation for Poultry Processing Workers with Agri Stats. It disregards this evidence because the aggregated cost data at issue is not such information. Instead, the DOJ claims any information that is conceivably related to wages qualifies as Competitively Sensitive Information about Compensation for Poultry Processing Workers. That position, however, conflicts with the plain language of the Final Judgment and should therefore be rejected.

What's more, the DOJ urges the Court to look at the wrong data, taking the position that the Final Judgment prohibits Wayne-Sanderson from providing specified information to Agri Stats regardless of whether Agri Stats further distributes the information. The DOJ supports this position by claiming that the last clause of Section IV.A.4 creates an independent prohibition on Wayne-Sanderson's communication of certain data to Agri Stats. That is not correct. The prohibition only limits the direct and indirect exchange of certain information *to other chicken companies*. The provision's last clause is just one example of barred indirect communications; it does not expand what is prohibited. Supreme Court and Fourth Circuit precedent reinforce this common-sense result.

Wayne-Sanderson's Motion should be granted.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Wayne-Sanderson's Memorandum of Law in Support of Motion for Clarification of the Modified Final Judgment, ECF No. 89-1 (the "Motion"), except for terms defined by the Final Judgment, ECF No. 85, which shall have the meaning ascribed to them in the definitions section of the Final Judgment. ECF No. 85 § II.

# ARGUMENT

## I. NO COMPETITIVELY SENSITIVE INFORMATION ABOUT COMPENSATION IS BEING SENT TO OR RECEIVED FROM AGRI STATS.

The DOJ's position that Wayne-Sanderson is violating the Final Judgment by sending aggregated cost information to Agri Stats, *see* Opposition, ECF No. 104 ("Opp.") 2-3, is based on an erroneous interpretation of Section IV.A.4 of the Final Judgment. That provision only prohibits Wayne-Sanderson from directly or indirectly sending or receiving Competitively Sensitive Information about Compensation for Poultry Processing Workers to other chicken companies. Final Judgment § IV.A.4. Because no such data is being exchanged, Wayne-Sanderson is entitled to an order clarifying that its continued participation in Agri Stats does not violate the Final Judgment.

### a. Providing Agri Stats with Aggregated Cost Information Does Not Violate the Final Judgment.

Attempting to impermissibly expand Section IV.A.4's prohibition, the DOJ claims that Wayne-Sanderson is barred from exchanging "'information that is relevant to' a variety of topics, including 'all forms of payment for work.'" Opp. 3 (quoting Final Judgment § IV.G (definition of Competitive Sensitive Information) and § IV.H (quoting definition of Compensation)). Section IV.A.4, however, does not prohibit communicating information that is merely "relevant to" Compensation; instead, it limits the prohibition to exchanging actual Compensation information for Poultry Processing Workers. The DOJ's contrary position confuses the Final Judgment's definition of Competitively Sensitive Information with the definition of Compensation. Opp. 3. Stated differently, the DOJ attempts to rewrite the Final Judgment by importing the phrase "relevant to" from the definition of "Competitively Sensitive

Information"[2] into the definition of "Compensation" to argue that any information that has a conceivable connection to Compensation cannot be exchanged. *Id.*

The DOJ's attempt to expand Section IV.A.4's prohibition is not surprising. Recognizing that the Final Judgment only prohibits the exchange of Compensation information for Poultry Processing Workers is fatal to the DOJ's position. Indeed, the DOJ does not dispute that Wayne-Sanderson neither provides to nor receives from Agri Stats current information about any employee's hourly wage, the pay rate for any given position, current employee headcounts, and the benefits paid to any employee. Mot. 8; ECF No. 89-2, Moss Decl. ¶ 8. The DOJ does not dispute that the information provided to Agri Stats is comprised of two aggregated cost figures: (1) total department-level wages; and (2) total department-level hours worked. Mot. 8; ECF No. 89-2, Moss. Decl. ¶¶ 9-10. The DOJ does not dispute that this cost information is not informative of what any single employee at Wayne-Sanderson is paid and that it would be impossible to determine what any one Poultry Processing Worker is paid from this aggregated cost information. Mot. 8; ECF No. 90-6, Feyler Decl. ¶ 6. The DOJ does not dispute that Agri Stats reports play no role in Wayne-Sanderson's wage and salary decisions. Mot. 8; ECF No. 89-3, Bolen Decl. ¶ 3. And the DOJ does not dispute that the information provided to Agri Stats looks nothing like Wayne-Sanderson's *actual* compensation information. Mot. 8-9; ECF No. 89-2, Moss. Decl. ¶¶ 10-13; ECF No. 89-6, Feyler Decl. ¶¶ 6-7. The DOJ's failure to dispute any of

---

[2] "'Competitively Sensitive Information' means information that is **relevant to**, or likely to have an impact on, at least one dimension of competition, including price, cost (including Compensation), output, quality, and innovation. Competitively Sensitive Information includes prices, strategic plans, amounts and types of Compensation, formula and algorithms used for calculating Compensation or proposed Compensation, other information related to costs or profits, markets, distribution, business relationships, customer lists, production capacity, and any confidential information the exchange of which could harm competition." Final Judgment § II.G (emphasis added).

3

these facts is telling—it is effectively an admission that aggregated cost data is not information about Compensation for Poultry Processing Workers.[3]

Acknowledging these deficiencies, the DOJ alternatively argues that the information sent to and received from Agri Stats is "quite granular" and suggests that aggregated cost information may be used to discern what Compensation Wayne-Sanderson pays its Poultry Processing Workers. Opp. 3 (citing Figures 1 & 2 from the DOJ's Motion for Enforcement of Final Judgment). But the DOJ's position is refuted by the evidence it cites. As more fully explained in Wayne-Sanderson's opposition to the DOJ's motion to enforce the final judgment, Figure 1 only shows aggregate labor costs for an entire department and the hours attributable to those costs, and Figure 2 is even more aggregated, showing total plant-level costs for various Wayne-Sanderson expenditures, including labor. *See* Wayne-Sanderson's Opposition to the United States' Motion to Enforce the Final Judgment, ECF No. 105 ("WS Opp.") 16-18. Even more concerning, and in reliance on a misrepresentation of Figure 3 from its motion to enforce, the DOJ claims that Agri Stats reports include Compensation information for specific workers at Wayne-Sanderson. Opp. 3 (citing Figure 3 from the DOJ's motion to enforce). That is not correct. In Figure 3, Agri Stats simply takes the total labor costs for a certain department at Wayne-Sanderson and proportionally allocates total labor costs and hours in a department to various positions. WS Opp. 19 (further explanation on this issue).

Finally, the DOJ's argument also fails because it has not established that aggregated cost data is *Competitively Sensitive Information* about Compensation. Critically, Section IV.A.4 does not prohibit communication of all information about Compensation. Rather, it carves out a

---

[3] Even applying the DOJ's expansive definition, the DOJ has not explained how aggregated cost data is relevant to Compensation. That is because it is not. It is relevant to how much money Wayne-Sanderson spends for labor at the department-level.

4

subset of information about Compensation, *i.e.*, Competitively Sensitive Information about Compensation for Poultry Process Workers. The DOJ does not address the term "Competitively Sensitive Information" or explain why the information shared with Agri Stats falls within this narrower subset. The term Competitively Sensitive Information is defined in the Final Judgment as information that is "is relevant to, or likely to have an impact on, . . . competition" meaning, as explained in the second sentence of the definition, information "the exchange of which could harm competition." Final Judgment § II.G. The DOJ's failure to address whether the information exchanged is *Competitively Sensitive Information* about Compensation reinforces the absence of a final judgment violation here.

The DOJ has the burden of establishing a violation of the Final Judgment. *See* Final Judgment § XIII.A. Its conclusory assertion that aggregated cost data qualifies as Competitively Sensitive Information about Compensation for Poultry Processing Workers falls far short of meeting that burden.

### b. Wayne-Sanderson's Receipt of Data from Agri Stats Is Not a Final Judgment Violation.

The DOJ erroneously asserts that Wayne-Sanderson has not asked the Court to clarify that its receipt of data from Agri Stats does not violate the Final Judgment. Opp. 6. Contrary to the DOJ's assertion, the Motion specifically seeks an order clarifying that "Wayne-Sanderson has not violated Section IV.A.4 of the Final Judgment by providing and ***receiving*** aggregated cost information to and from Agri Stats in connection with the Company's subscription." Mot. 18 (emphasis added). Because the aggregated cost information provided to Agri Stats is not information about Compensation for Poultry Processing Workers, Wayne-Sanderson's receipt of data from Agri Stats cannot violate the Final Judgment. That is because, before any chicken company receives an Agri Stats report, the aggregated cost information is further aggregated,

5

combined with other variables, and then presented in an anonymized format at the plant-level. *See also* WS Opp. 15-20 (additional support for this argument).

## II. SECTION IV.A.4 PROHIBITS CERTAIN INFORMATION EXCHANGES WITH OTHER CHICKEN COMPANIES—NOT AGRI STATS.

The DOJ's position that Section IV.A.4 prohibits Wayne Sanderson from communicating certain information to Agri Stats, *see* Opp. 4-5, is inconsistent with the provision's plain text. Read in its entirety, the provision prohibits Wayne-Sanderson from directly or indirectly communicating certain information to other chicken companies, including through Consulting Firms that publish reports regarding Compensation. WS Opp. 11-14.

The DOJ selectively quotes Section IV.A.4 to support its erroneous interpretation. Its opposition states: "The Final Judgment expressly prohibits Wayne-Sanderson from 'Communicating Competitively Sensitive Information about Compensation for Poultry Processing Workers to any Consulting Firm that produces reports regarding Compensation for Poultry Processing Workers that are shared with other Poultry Processors.'" Opp. 4 (quoting Final Judgment § IV.A.4). Reviewing Section IV.A.4 in full proves that the prohibition only reaches direct and indirect communications with other chicken companies:

> A. Management and Human Resources Staff of each Settling Defendant must not, whether directly or indirectly, including through a Consulting Firm or other person:
>
> 4. Communicate Competitively Sensitive Information about Compensation for Poultry Processing Workers to any Poultry Processor not owned or operated by one or a combination of Settling Defendants, including **Communicating Competitively Sensitive Information about Compensation for Poultry Processing Workers to any Consulting Firm that produces reports regarding Compensation for Poultry Processing Workers that are shared with other Poultry Processors[.]**

Final Judgment § IV.A.4 (emphasis added). The DOJ quotes the bolded language and omits the balance of the provision.

The DOJ does this because, once the quoted provision is considered in context, the only conclusion is that there is no blanket prohibition concerning what may be communicated to Agri Stats. The provision quoted by the DOJ follows a general prohibition and the word "including." The use of the "including" phrase before the language relied on by the DOJ confirms it is an illustrative application of the general prohibition that precedes it (*i.e.*, it is one type of indirect communication prohibited by Section IV.A.4—indirect communications about Compensation for Poultry Processing Workers with other chicken companies through reports published by Consulting Firms). Indeed, "[b]oth the Supreme Court and [Fourth Circuit] have held that 'the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.'" *United States v. Helton*, 944 F.3d 198, 206 (4th Cir. 2019) (citations omitted); *see also Ariz. State Bd. For Charter Schs. v. U.S. Dept. of Educ.,* 464 F.3d 1003, 1007 (9th Cir. 2006) ("In both legal and common usage, the word 'including' is ordinarily defined as a term of illustration, signifying that what follows is an example of the preceding principle."). Well-settled principles of contract construction dictate that the term "including" in the Final Judgment should be given this ordinary meaning. *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 734 (4th Cir. 1989) ("In construing contracts, ordinary words are given their ordinary meanings.").

The DOJ's reliance on *Adams v. Dole*, 927 F.2d 771, 776 (4th Cir. 1991) in support of its erroneous interpretation is misplaced. Opp. 5. There, the Fourth Circuit recognized that the term "including" is ordinarily used as the introductory term for an incomplete list of examples. *Dole*, 927 F.2d at 776. In *Dole*, however, context showed that "including" could not be illustrative because the words following "including" could never be illustrative of what preceded the word. *Id.* at 776-77. To illustrate the concept, the Fourth Circuit used this example: "all licensed

7

drivers, including *applicants* for driver's licenses, shall take an eye exam." *Id.* at 777. An "applicant" for a license is indisputably not a "licensed driver." Where such a clear inconsistency results, the term "including" must be given a different meaning. *See Dole*, 927 F.2d at 777 ("If we say that 'all licensed drivers, including *applicants* for driver's licenses, shall take an eye exam,' the word 'including' means 'and' or 'in addition to.' That meaning is derived from the fact that a 'licensed driver,' by definition, excludes an 'applicant . . . .'"); *Ariz. State Bd. For Charter Schs.*, 464 F.3d at 1008 ("[S]ome courts have interpreted 'including' to mean 'and' or 'in addition to,' [but only] where the exclusivity of two or more terms requires a broader interpretation to avoid an irrational or absurd result" and citing *Dole*).

*Dole* is inapplicable. Here, there is no inconsistency between Section IV.A.4's prohibition and the illustration that follows the word "including." Stated differently, using a Consulting Firm's reports to communicate specified information to competitors is just one type of indirect communication prohibited by the Final Judgment. There is therefore no basis to interpret "including" in a manner that is inconsistent with its ordinary meaning. *See, e.g.*, *Chickasaw Nation v. United States*, 534 U.S. 84, 89-90 (2001) (holding that the word "'include' means to 'contain'" and that what follows the word "provid[es] an illustrative list of examples").

The DOJ's reading of the word "including" is not the only problem with its proposed interpretation. The DOJ also improperly renders the last sixteen words of Section IV.A.4 meaningless. *See Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993) (explaining that "[c]ontract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage."). The illustrative example in Section IV.A.4 speaks to prohibiting "Communicating Competitively Sensitive Information about Compensation for Poultry Processing Workers to any Consulting

8

Firm *that produces reports regarding Compensation for Poultry Processing Workers that are shared with other Poultry Processors*." The DOJ ignores those italicized words, claiming that "Wayne-Sanderson's obligations under the Final Judgment include refraining from 'Communicating' Compensation information 'to any Consulting Firm.'" Opp. 6. In other words, if the DOJ's interpretation was correct, there would be no need for any of the italicized words. The provision would just stop after "Consulting Firm." The provision does not stop, however, because its purpose is to provide an example of an indirect communication that is prohibited by Section IV.A.4—it is not there to entirely prohibit communications with Consulting Firms.

      The DOJ alternatively argues that, even if communications to Agri Stats are not prohibited, Wayne-Sanderson has violated the Final Judgment because the data it provides to Agri Stats is subsequently used in benchmarking reports provided to other chicken companies. Opp. 5. This argument fails for at least two reasons. First, the DOJ has accused Wayne-Sanderson of violating the Final Judgment for both sending and receiving Agri Stats data. *See, e.g.*, *id.* at 2-4; *see generally* Memo. in Supp. of the United States' Motion to Enforce the Final Judgment, ECF No. 86-1 ("DOJ Mot."). In view of this accusation, Wayne-Sanderson is entitled to clarification that its provision of data to Agri Stats does not violate the Final Judgment. *See* Final Judgment § XII. The need for Court guidance is all the more necessary here given that, prior to the DOJ's filing of its motion to enforce, Wayne-Sanderson repeatedly tried to meet with the DOJ to understand its (and the Monitors') concerns with the Agri Stats reports. The Company even guessed at the DOJ's potential concerns and made prospective revisions to the Agri Stats reports, even though the Company maintains that there was no violation of the Final Judgment. Mot. 16-17. The DOJ has not revealed why those changes have not alleviated its

9

concerns and has not meaningfully explained how providing aggregated cost information to Agri Stats allegedly violates the Final Judgment.

Second, the data Agri Stats receives from chicken companies is of a different nature than the data it provides to chicken companies. Agri Stats does not merely republish the data it receives. Instead, Agri Stats further aggregates, anonymizes, and integrates the information with other variables, before sharing any report with other chicken companies. *See* WS Opp. 8-9. For example, the total department cost of labor is used to calculate the cents per pound a chicken company is spending on labor costs per department and at the plant-level. *See id.* at 16-19.[4] Hopefully, all parties agree that such information is not about Compensation for Poultry Processing Workers. But the DOJ's blanket assertion that the data it receives from Agri Stats violates the Final Judgment provides Wayne-Sanderson with no way of understanding the limits of the DOJ's position. In any event, because the information received from Agri Stats is of a different nature than the information provided, the analysis of whether receiving data from Agri Stats violates Section IV.A.4 is materially different than whether sending it is a violation.

### III. THE EXTRINSIC EVIDENCE SUPPORTS WAYNE-SANDERSON'S INTERPRETATION.

To the extent the Court concludes that the Final Judgment is ambiguous and extrinsic evidence is consulted, the same result is warranted. The DOJ's suggestion that the extrinsic evidence supports its flawed interpretation of the Final Judgment is not well taken.

The DOJ claims that the Complaint filed in this proceeding is extrinsic evidence that supports its interpretation of the Final Judgment. Not so. Even the paragraphs relied upon by

---

[4] *See also* Scholer Decl., ECF No. 101-5 ¶ 20 ("Without aggregated plant and department-level labor cost data, no subscriber could meaningfully benchmark their operation on a cost per pound basis for a variety of critical metrics in the reports including: First Processing Cost per pound, Second Processing Cost per pound, Support Cost for Processing per pound, Total Plant Cost per pound, Margin Over Processing Cost, Operations Profit, Plant Contribution to Profit, or Sales Contributions to Profit.").

10

the DOJ do not support its position—those allegations show that the DOJ filed this litigation because of alleged exchanges of *disaggregated, granular,* and *identifiable* data, which is not the sort of data published in Agri Stats reports. *See* Mot. 8-13; Amended Complaint, ECF No. 48 ¶¶ 5(b, d), 7. Nor can the DOJ rely on its own Competitive Impact Statement. *See* Opp. 7. The DOJ's own views cannot serve as a credible interpretive aid. *United States v. Bechtel Corp.*, 648 F.2d 660, 665 (9th Cir. 1981) ("The government cannot unilaterally change the meaning of a judgment.").

The DOJ also claims that the *Jien* Complaint is not proper extrinsic evidence because it is "not 'part' of the Final Judgment or 'expressly incorporated in' it," Opp. 8.[5] Stated differently, the DOJ argues the *Jien* Complaint is impermissible extrinsic evidence because it is extrinsic to the Final Judgment. That makes no sense. In any event, the DOJ is mistaken; the *Jien* Complaint is expressly referenced in the Final Judgment and those references make clear that this proceeding is intertwined with *Jien*. *See* Final Judgment § II.O ("'*Jien*' means the case *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-2521, 2022 WL 2818950 (D. Md. July 19, 2022)); *id.* § X.B (*Jien* litigation settlement payments served as restitution to the DOJ in this case).

The other extrinsic evidence arguments that the DOJ makes are similarly unpersuasive. Its argument about "Wayne-Sanderson's conduct towards other consultants" is irrelevant. Opp. 8. The DOJ makes no attempt to compare other consultants' reports to the Agri Stats reports. And the referenced "conduct"—voluntarily modifying certain reports and discontinuing its subscription to others—only proves that Wayne-Sanderson is taking the Final Judgment seriously. Wayne-Sanderson's conduct towards other consultants is consistent with the

---

[5] The DOJ misrepresents *ITT*, which recognizes that "circumstances surrounding the formation of the consent order"—not just "documents expressly incorporated in the decree"—are appropriate extrinsic evidence. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975).

11

collaborative approach Wayne-Sanderson has pursued, and wants to continue to pursue, with the DOJ, the Monitors, and Agri Stats. Mot. 16-17 (exemplifying some of the good-faith and voluntary changes that Wayne-Sanderson made to its Agri Stats reports).

The DOJ's argument regarding whether the procompetitive purpose of the antitrust laws is proper extrinsic evidence is internally inconsistent. The DOJ first argues that the Court must interpret the Final Judgment "to give full effect to the procompetitive purposes of the antitrust laws." Opp. 7. But in its next breath, the DOJ says that "whether the information Wayne-Sanderson sends or receives has 'anticompetitive effects' or 'procompetitive benefits' . . . is irrelevant." *Id*. at 8. Only the first of those two statements is correct. Giving "full effect to the procompetitive purposes of the antitrust laws," the only rational conclusion is that participating in Agri Stats' benchmarking service is not anticompetitive. To the contrary, the procompetitive benefits associated with benchmarking are well-settled. Mot. 17-18 (collecting authority); Scholer Decl., ECF No. 101-5 ¶ 20.

Finally, the DOJ's argument regarding Wayne-Sanderson's "long-term subscription with Agri Stats" misses the point, which is that before negotiating and agreeing to the Final Judgment in April 2023, the DOJ was aware of Wayne Farms and Sanderson Farms' decades-long subscriptions to Agri Stats. *See* Mot. 14-15. The DOJ had that same knowledge when the parties amended the Final Judgment a year later. *See id.* If the DOJ had intended to impose a blanket prohibition on all data-sharing with Agri Stats, it had multiple opportunities to negotiate a simple provision: "Wayne-Sanderson may not continue to subscribe to Agri Stats." Wayne-Sanderson did not (and would not) have agreed to that wholesale prohibition. And while the DOJ might desire to insert one now, it cannot unilaterally do so years after Wayne-Sanderson agreed to the actual terms of the underlying consent decree. *Contra* Opp. 9.

## IV. THE DOJ'S REQUESTED REMEDY IMPERMISSIBLY SEEKS TO BAN WAYNE-SANDERSON FROM SUBSCRIBING TO AGRI STATS.

The DOJ's opposition and motion to enforce both confirm that the DOJ effectively seeks to ban Wayne-Sanderson from subscribing to Agri Stats. The opposition characterizes the requested remedy as a "temporary pause" on Wayne-Sanderson's ability to subscribe to Agri Stats until the DOJ and its appointed Monitors are satisfied that Wayne-Sanderson's participation in Agri Stats does not violate the Final Judgment. Opp. 9-10. It asserts that Wayne-Sanderson should not be allowed to continue its decades-long relationship while it and the Monitors engage in an unspecified "compliance review." Opp. 10.

But history teaches that this alleged "temporary pause" amounts to an effective ban. The opposition does not dispute that most of the information in Agri Stats reports has nothing to do with wages or compensation, regardless of how broadly those terms are defined. *See* Mot. 17. It likewise does not dispute that Wayne-Sanderson voluntarily made numerous modifications to the two (of six) Agri Stats reports it guesses the DOJ takes issue with, even though the Company believes it has never violated the Final Judgment. *Id*. at 17-18. And it does not dispute that since the Monitors initially raised the purported violation at issue here, Wayne-Sanderson has continuously sought to engage with the DOJ and Monitors to understand their position. Wayne-Sanderson even made its Agri Stats specialist available to explain the changes the Company made to its Agri Stats reports and to demonstrate that there has been no Final Judgment violation. *Id*. at 5.

But it has been almost a year since the Monitors initially raised unspecified and overbroad concerns regarding Wayne-Sanderson's Agri Stats subscription. Despite Wayne-Sanderson's efforts to understand the alleged concerns, the DOJ and Monitors have refused to meaningfully engage with Wayne-Sanderson and explain their basis for believing that Wayne-

13

Sanderson's participation in Agri Stats violates the Final Judgment. There is no reason to think that anything will change during the DOJ's unspecific and ill-defined "compliance review." There is all the reason, however, to think that the DOJ and Monitors will act consistently with their behavior over this past year and utilize the "temporary pause" and "compliance review" to effectively ban Wayne-Sanderson from subscribing to Agri Stats.

Courts have held that such wholesale bans are improper remedies for consent decree violations. *See, e.g.*, *FTC v. Trudeau*, 579 F.3d 754, 770 (7th Cir. 2009). The DOJ's attempt to shrug off *Trudeau* because it "does not seek contempt sanctions," Opp. at 10, but merely seeks to enforce the Final Judgment, is far-fetched. Its assertion that the Court has "broad discretion to fashion remedies" in this case, DOJ Mot. 8, relies expressly on contempt law—though the DOJ selectively deletes the reference to contempt law in the case it cites. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2016 WL 1597119, at *5 (D. Md. Apr. 20, 2016) (emphasis added) ("[C]ourts have broad discretion to fashion remedies ***for civil contempt***."); *see also* DOJ Mot. 8 (selectively quoting *Victor Stanley*). In any event, a motion to enforce is not a vehicle to seek a vague and indefinite remedy that would not even be permissible as a contempt sanction.

Thus, if any technical violation of the Final Judgment is found, Wayne-Sanderson should be offered the opportunity to cure such a violation before it is effectively banned from participating in Agri Stats.

## **CONCLUSION**

For the reasons above and in its prior briefing, including in its opposition to the DOJ's motion to enforce, Wayne-Sanderson's Motion to Clarify the Amended Final Judgment should be granted.

Dated: March 10, 2025

Respectfully submitted,

By: /s/ *Christopher E. Ondeck*
 Christopher E. Ondeck
 Stephen R. Chuk (*pro hac vice*)
 PROSKAUER ROSE LLP
 1001 Pennsylvania Ave., NW
 Suite 600 South
 Washington, DC 20004
 Telephone: (202) 416-6800
 Facsimile: (202) 416-6899
 condeck@proskauer.com
 schuk@proskauer.com

Jared DuBosar (*pro hac vice*)
PROSKAUER ROSE LLP
2255 Glades Road
Suite 421 Atrium
Boca Raton, FL 33431
Telephone: (561) 995-4702
Facsimile: (561) 241-7145
jdubosar@proskauer.com

Hannah Silverman (*pro hac vice*)
Henrique Carneiro (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3193
Facsimile: (212) 969-2900
hsilverman@proskauer.com
hcarneiro@proskauer.com

*Attorneys for Wayne-Sanderson Farms*