**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA,

                              *Plaintiff*,

    v.


CARGILL MEAT SOLUTIONS
CORPORATION, *et al.*,

                              *Defendants*.

Civil Action No.: 1:22-cv-01821-SAG

**REPLY IN SUPPORT OF THE UNITED STATES'**
**MOTION TO ENFORCE THE FINAL JUDGMENT AGAINST WAYNE-SANDERSON**

# Table of Contents

I.      The Decree Prohibits Exchanging "Competitively Sensitive Information about Compensation" with Agri Stats ......................................................................................1

II.     Wayne-Sanderson Violates the Decree by Providing and Receiving Data "about Compensation" ........................................................................................................2

III.    Wayne-Sanderson's Exchange of Other Types of Data Does Not Excuse Its Systemic Decree Violations ....................................................................................................5

IV.     Wayne-Sanderson's Accusations Are Irrelevant and False ..........................................6

V.      Conclusion ..............................................................................................................7

Wayne-Sanderson's arguments boil down to a tortured misreading of the Final Judgment to excuse its violative conduct and a strawman exaggeration of the relief sought by the United States. Wayne-Sanderson is pursuing, at its heart, a veiled attempt to modify the decree without any change in circumstances, when the plain language of the Final Judgment prohibits both sending competitively sensitive compensation data *to* Agri Stats and receiving competitively sensitive compensation data *from* Agri Stats. Contrary to Wayne-Sanderson's assertions, the United States' motion is eminently reasonable, seeking only to end the violations of the consent decree both in the short term (by pausing data exchanges that include clearly prohibited material) and long term (allowing them to restart only when the prohibited material has been removed). To compensate for the twenty-one months during which Wayne-Sanderson has been in breach of the consent decree, an extension of the decree is more than appropriate. For the reasons set forth herein and in the United States' previous briefs, the Motion to Enforce should be granted.

## I.    The Decree Prohibits Exchanging "Competitively Sensitive Information about Compensation" with Agri Stats

Wayne-Sanderson does not dispute that it provides labor cost data to Agri Stats, a company whose business model is to use data provided by chicken processors to generate reports. *See* ECF 89-1 at 8. Such "Communicat[ions]" to Agri Stats violate the consent decree— without any need to trace Agri Stats' subsequent use of that data—for the reasons already explained in the United States' Reply in Support of its Motion to Enforce the Final Judgment Against George's. *See* ECF 119 at 1-2. Rather than repeat those arguments here, the United States incorporates them by reference.

1

## II.     Wayne-Sanderson Violates the Decree by Providing and Receiving Data "about Compensation"

Despite admitting that it provides "total department-level *compensation* and hours worked" to Agri Stats, ECF 89-1 at 2 (emphasis added), Wayne-Sanderson claims that this data is somehow not "about Compensation." It clearly is. Under the decree's plain terms, Wayne-Sanderson supplies data "about"—meaning "[c]oncerning, regarding, with regard to, in reference to; in the matter of"—"Compensation," which the decree defines to embrace "all forms of payment for work." WS FJ § II.G; Oxford English Dictionary (3d ed. June 2024) (defining "about").

To resist this straightforward conclusion, Wayne-Sanderson claims that it does not provide or receive "information about any employee's hourly wage, the pay rate for any given position, current employee headcounts, and the benefits paid to any employee." ECF 105 (Wayne-Sanderson Opp'n) at 16. By this, Wayne-Sanderson apparently means that the data is "not representative of *any single* Wayne-Sanderson employee's actual wages." *Id.* (emphasis added); *see also id.* at 9 ("subscribing producers cannot determine the actual *wages* received by any *one* poultry worker") (emphases added); *id.* ("The data do[es] not disclose any *individual's* pay, title, or seniority.") (emphasis added); *id.* at 17 ("Wayne-Sanderson's actual compensation data . . . is not informative of what any *individual* employee at Wayne-Sanderson is paid.") (emphasis added). But the decree prohibits sharing of any sensitive data "about Compensation," regardless of whether the data identifies a particular employee's wage. Wayne-Sanderson cannot "add words of [its] own choosing" into the decree to fit its behavior. *United States v. Sonmez*, 777 F.3d 684, 688 (4th Cir. 2015).

Grasping for support, Wayne-Sanderson offers declarations from a paid consulting firm and two of Wayne-Sanderson's employees. This is improper. Where, as here, "the contractual

language is clear," a court may not "invite or accept the submission of extrinsic evidence, 'find' ambiguity in the contractual text based upon that evidence, [or] resolve the found ambiguity by resort to that extrinsic evidence." *Schneider v. Cont'l Cas. Co.*, 989 F.2d 728, 731 (4th Cir. 1993) (applying Virginia law); *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985) (same rule applying federal common law).

Even if the Court considered this extrinsic evidence, Wayne-Sanderson cannot manufacture ambiguity. Wayne-Sanderson's consultant, Emilie Feyler, offers only an interpretation of the phrase "actual wage rate," yet the decree prohibits sharing data "about Compensation" and defines "Compensation" broadly.[1] To the extent that Wayne-Sanderson uses her declaration to suggest that data is not "about Compensation" in an economic sense unless it specifies a particular individual's pay, Wayne-Sanderson is clearly wrong. Compensation is defined in the Final Judgment as more than simply wages; it includes "salaried pay, hourly pay, regular or ad hoc bonuses, over-time pay, and benefits, including healthcare coverage, vacation or personal leave, sick leave, and life insurance or disability insurance policies." WS FJ § II.G. Once Ms. Feyler's inapposite definition of "actual wage rate" falls away, so too does her declaration's discussion of whether a processor could "determine the actual *wages* received by any *one* poultry worker." ECF 105 at 9 (emphases added); *see also, e.g.*, ECF 89-4 at ¶¶ 6-7.

Nor does the meaning of "Compensation" change based on the declarations of Wayne-Sanderson's employees Mindy Bolen and Jay Moss. ECF 89-2 (Moss Decl.); ECF 89-3 (Bolen Decl.). Much like its argument that the United States must show how Agri Stats uses data provided by Wayne-Sanderson (which it need not), Wayne-Sanderson's argument rests on the

---

[1] The sole mention of the word "compensation" in Feyler's declaration is when she listed out various costs including "workman's compensation," which is a type of insurance provided to employees who are injured or become ill during employment. *See* ECF 89-4 ¶ 6.

idea that the United States must show not only a violative data exchange, but also subsequent use of the data by Wayne-Sanderson. It need not. Under the decree, whether Wayne-Sanderson "*Communicat[es]* Competitively Sensitive Information about Compensation," WS FJ § IV.A.4 (emphasis added), is distinct from whether Wayne-Sanderson "*us[es]* non-public, Competitively Sensitive Information about Compensation," WS FJ §IV.A.5 (emphasis added). These separate prohibitions should not be conflated, as Ms. Bolen and Mr. Moss appear to do. ECF 89-3 (Bolen Decl.) ¶ 7 (stating that to her knowledge "Agri Stats reports play no role in Wayne-Sanderson's process of setting wage rates, benefits, or salaries"); ECF 89-2 (Moss Decl.) ¶ 3 ("To my knowledge, Wayne-Sanderson does not reference Agri Stats for wage setting."); *see, e.g.*, *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 704 (2022) (rejecting a reading of one subsection that "makes a nullity of [another] subsection"). In prohibiting competitively sensitive "Communicat[ions]" with certain entities, the consent decree prohibits conduct that can lead to harm. The United States did not negotiate and enter a decree that required it to wait for, identify, and report on harm after the fact. And nothing in the decree suggests that the definition of "about Compensation" depends on the opinions of HR personnel. WS FJ § II.G.

Even if, as Wayne-Sanderson argues, data can become so aggregated that it no longer is "about Compensation," those are not the facts here.[2] Wayne-Sanderson's exchange of data with Agri Stats is granular. For each specific department at each individual plant, Wayne-Sanderson reports to Agri Stats the number of regular hours, holiday hours, overtime hours worked, and the specific amount of earnings paid for those hours worked. *See* ECF 86-1 at 10, Fig. 1. In a

---

[2] In contrast to its continued relationship with Agri Stats, Wayne-Sanderson terminated its relationship with two other consulting firms when they were unable to exclude compensation data aggregated from its competitors in reports prepared for Wayne-Sanderson. ECF 86-3, Ex. 1 at 10-11 (Monitors' Report).

processing plant, unlike Wayne-Sanderson's fanciful "kitchen department" (ECF 105 at 17),[3] a department is an indicator of the job duty. For example, the breast deboning department consists of workers who debone breasts, and laborers in the sanitation department work in sanitation.

### III.    Wayne-Sanderson's Exchange of Other Types of Data Does Not Excuse Its Systemic Decree Violations

Conflating violation and remedy, Wayne-Sanderson accuses the United States of asserting that "providing information to Consulting Firms is prohibited wholesale" or that the "subscription to Agri Stats" constitutes the violation. ECF 105 at 13; ECF 89-1 at 2. Not so. The United States seeks to remedy specific violations of the consent decree relating to a subset of data that Wayne-Sanderson provides to and receives from Agri Stats. That Wayne-Sanderson shares other competitively sensitive information with Agri Stats has no bearing on Wayne-Sanderson's systemic sharing of "Competitively Sensitive Information about Compensation." Wayne-Sanderson's pointless digression into other types of data in Agri Stats' reports cannot excuse its decree violations.

Even so, Wayne-Sanderson's consultant, Ms. Feyler, cites examples that do appear to include such data for "Competitively Sensitive Information about Compensation." For example, Ms. Feyler mentions that "first and second processing costs" within the Processing Analysis reports list some non-compensation metrics but fails to address that these "costs" necessarily include *compensation information*. ECF 89-4 ¶ 5. Agri Stats relies on compensation information provided by poultry companies to compute these metrics. Even in the example provided by Ms. Feyler regarding support departments such as the maintenance department, costs include

---

[3] While claiming that that Figure 3 does not show actual wages for individuals, Wayne-Sanderson does not deny that the figure relies on data "about Compensation" exchanged through Agri Stats. *See* ECF 105 at 19.

compensation, wages, and other benefits, paid to maintenance workers. *See id*. And critically, according to Ms. Feyler, "Sanderson Farms used Agri Stats reports to determine how to reduce costs." *Id*. at 6. Compensation to workers, i.e., "labor costs," is one of the major costs of producing chicken.

The ubiquity of data "about Compensation" in the Agri Stats reports belies Wayne-Sanderson's contention that "a very small subset of data contained in Agri Stats reports is related to Compensation." ECF 105 at 14. Because Wayne-Sanderson has refused to identify, segregate, and cease the violative data exchanges amidst its larger relationship with Agri Stats, the United States has been left with no option but to request a pause on data exchanges to end the violation and permit for an effective, long-term remedy.[4]

## IV.    Wayne-Sanderson's Accusations Are Irrelevant and False

Rather than focus on the merits, Wayne-Sanderson repeatedly tries to cast aspersions on this enforcement action. It improperly suggests that, as a multi-billion-dollar company represented by multiple law firms, Wayne-Sanderson was "forced to enter a consent decree" in return for approval of its merger. ECF 105 at 5 n.4. This assertion is false. Wayne-Sanderson, like all parties, had the right to litigate this matter and opted instead to settle. Its assertion also ignores that George's entered its own consent decree with the United States, despite having no involvement in the merger, and now finds itself in the same position as Wayne-Sanderson for failing to abide by the Final Judgment. ECF 46; ECF 108. Similarly, Wayne-Sanderson's inappropriate innuendo and assertions regarding the timing of the United States' motion to enforce the Final Judgment have no merit or bearing on Wayne-Sanderson's obligations or

---

[4] Wayne-Sanderson's arguments opposing an extension of the decree lack merit for the same reasons discussed in the United States' reply brief in support of enforcing the decree against George's. ECF 119 at 7-10.

violations. They also ignore the fact that the United States moved to enforce the Final Judgment against George's on February 5, 2025 for similar conduct and under an identical understanding of the Final Judgment. *See* ECF 105 at 5, 11. Nor does either assertion provide any excuse for Wayne-Sanderson's systemic violations of the decree.

## IV.    Conclusion

For the reasons articulated above and in the United States' Motion to Enforce the Final Judgment, ECF 86, the United States requests that the Court (a) order Wayne-Sanderson to cease sharing all information with Agri Stats until the Monitors and the United States, or this Court, can ensure compliance with the Final Judgment, (b) extend the term of the Final Judgment, and (c) order any additional relief as may be appropriate.

Dated: March 10, 2025

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

KATE M. RIGGS
Acting Chief
Civil Conduct Task Force

*/s/* Eun-Ha Kim
EUN-HA KIM
*(special admission as government attorney)*
Senior Trial Counsel

*/s/* Jessica J. Taticchi
JESSICA J. TATICCHI
*(special admission as government attorney)*
Trial Attorney, Civil Conduct Task Force

United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 805-8465
Eun-Ha.Kim@usdoj.gov
Jessica.Taticchi@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Eun-Ha Kim, hereby certify that on March 10, 2025, I caused true and correct copies of the United States' Reply in Support of Its Motion to Enforce the Final Judgment Against Wayne-Sanderson to be served via the Court's CM/ECF system and email to Wayne-Sanderson's counsel.

FOR PLAINTIFF
UNITED STATES OF AMERICA

/s/ Eun-Ha Kim
EUN-HA KIM
*(special admission as government attorney)*
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 805-8465
Eun-Ha.Kim@usdoj.gov